HENRY E. MUNSEY *vs.* CHARLES H. BUTTERFIELD.

Middlesex.     September 6. — October 20, 1882.

A. agreed to sell, and B. to purchase, A.'s milk route in certain towns, delivery to be made on a day named. In an action by A. against B. for breach of the agreement, in refusing to take the route and pay the consideration, A. testified, on cross-examination, that after he made the agreement, and before the day fixed for delivery, he bargained with C. to purchase his milk route, intending to run the same after B. took his route ; that C.'s route comprised a portion of the same territory which he sold to B. ; that he was not to disturb any of the customers of the route sold to B., but he considered he had a right to obtain new customers on the same route ; that he told B. he had bargained for C.'s route, and also told him he could not hold the customers in one of the towns unless he got there early in the morning. *Held*, on this evidence, that the judge, before whom the case was tried, rightly directed a verdict for the defendant.

CONTRACT for breach of an agreement in writing, dated February 24, 1880, by the terms of which the plaintiff agreed to sell

for $2000, and the defendant agreed to purchase, certain articles
of personal property used in the milk business, " also the good
will of said Munsey's milk route lying in West Somerville, East
Somerville, North Somerville and Charlestown," possession to
be delivered on April 1, 1880.

At the trial in the Superior Court, before *Wilkinson*, J., the
plaintiff introduced evidence tending to prove the execution and
delivery of the contract by the parties; and that, on April 1,
1880, the plaintiff left with a person at the house where the
defendant lived a bill of sale of the property. The plaintiff tes-
tified that, a few minutes after he so left the bill of sale, he met
the defendant a short distance from the house and told him that
he had left the bill of sale at the house for him, and demanded
the payment of the money according to the agreement; that the
defendant then told him he should not take the property and
that he should back out; and that the defendant had not taken
the property or paid anything.

On cross-examination, the plaintiff testified that he sold the
defendant the personal property and the good will of his milk
route; that the good will was the main part of the value in
the trade; that the personal property was worth from $800 to
$1000; that, soon after the contract with the defendant was ex-
ecuted, the plaintiff bargained with one Wellington to purchase
Wellington's milk route, intending to run the same after the
defendant took his, which route ran over a portion of the same
territory in Charlestown and Somerville as the route which he
sold to the defendant; that he was not to disturb any of the cus-
tomers of the route sold to the defendant, but that he considered
that he had a right to obtain for himself new customers on the
same location; that on March 12, 1880, he applied to the de-
fendant for money, and told him that he wanted it to pay Wel-
lington for his milk route, and told the defendant that he had
bargained for said route, and also told him that he could not
hold the customers in Charlestown unless he got there early in
the morning.

Upon this evidence, the defendant asked the judge to rule
that the plaintiff could not maintain his action. The judge so
ruled, and directed a verdict for the defendant; and the plaintiff
alleged exceptions.

*O. B. Mowry*, for the plaintiff.

*R. Lund & E. A. Upton*, for the defendant.

W. ALLEN, J. By the agreement between the parties, made on February 24, 1880, the defendant agreed to accept and pay for certain personal property, to be delivered to him by the plaintiff on the first day of the next April. This action is brought to recover damages for the refusal of the defendant to accept the property. To maintain it, the plaintiff must prove that he offered, or was ready, to deliver the property. A material part of the property to be delivered was, as stated in the agreement, " The good will of said Munsey's milk route lying in West Somerville, East Somerville, North Somerville and Charlestown." This contract, called a sale of the good will of Munsey's milk route, was really, like the sale of the good will of any business, an agreement by the plaintiff that he would retire from it, and would allow the defendant to enjoy the benefits and advantages of it, and would do nothing to impair or injure it. This agreement was implied in the transaction, and in fact constituted the contract of sale of the good will of the milk route on the part of the plaintiff. *Dwight* v. *Hamilton*, 113 Mass. 175. The defendant did not agree to pay for the right to run a milk route over the territory. The plaintiff did not have that exclusive right. Neither did he agree to pay for the mere right or opportunity of getting customers in consequence of the plaintiff's withdrawal from the route. This is by no means all that constitutes the good will of a business ; that is, as was said by Chief Justice Bigelow in *Angier* v. *Webber*, 14 Allen, 211, in language applied to such a sale by one member of a firm to another, but equally applicable to a sale to a stranger, " the benefit or advantage which had accrued to the firm, in addition to the value of their property, derived from their reputation for promptness, fidelity and integrity in their transactions, from their mode of doing business, and other incidental circumstances, in consequence of which they had acquired general patronage from constant and habitual customers." In the case at bar, the right which the defendant was to acquire was the right to the business of running the milk route as the circumstances, the conduct and the influence of the plaintiff had made it, and this right could be acquired only by the agreement of the plaintiff not to interfere

with the business, — not to use the opportunities and influences which had built it up to impair it. If the plaintiff, when he made the offer to deliver the property, upon which he relies, intended, and gave the defendant to understand that he intended, not to keep his implied agreement, which constituted a material part of the right or property to be sold and delivered, he did not make such an offer as the defendant was bound to accept, and the refusal of which would give the plaintiff a cause of action. The defendant was justified, by the conduct and declarations of the plaintiff, in believing, not only that he intended to run a milk route in competition with the defendant over a part of the territory included in the route proposed to be sold, but to run it in opposition to that, and not only to obtain new customers, but to divert old ones from the defendant; and that the plaintiff did not offer, and did not intend, to carry out his agreement.

*Angier* v. *Webber, ubi supra,* was a bill in equity for an injunction to restrain the defendants from violating an agreement to do nothing to impair or injure the good will in a teaming business between Boston and Somerville, which had been sold by the defendants to the plaintiff. The defendants bought the business of other licensed stands near that sold, and engaged in the business, but did not solicit the customers of the plaintiff except by holding themselves in readiness to do business. It was held that this was a breach of the agreement. Chief Justice Bigelow said : " These facts show that the defendants have done acts which tend directly to deprive the plaintiff of the benefit of the reputation of the old firm, to take away from him the patronage which appertained to it, and to draw away the business of its habitual customers, to which he had acquired a right by the purchase of the good will." This was even less than the plaintiff in the case at bar gave the defendant to understand that he intended to do.

We think that the plaintiff did not offer to the defendant the good will of the milk route, and that the defendant was justified in refusing to accept what was offered. In the opinion of a majority of the court, the ruling that the plaintiff could not maintain his action was correct. *Exceptions overruled.*

### MEMORANDUM.

On the thirty-first day of October 1882, the Honorable WILLIAM C. ENDICOTT resigned the office of justice of this court, which he had held since the fifth day of March 1873.