OLD CORNER BOOK STORE *vs.* HENRY M. UPHAM
& another.

Suffolk.    December 3, 1906. — February 26, 1907.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Sale. Good Will. Partnership. Equity Jurisdiction,* To enforce negative contract, Accounting. *Equity Pleading and Practice,* Appeal, Amendment.

In this Commonwealth when a man voluntarily sells the good will of his business he thereby agrees not to set up a competing business which will derogate from the good will that he has sold, and the question whether a new business set up by him is in derogation of his sale is one of fact relating to the character of the business sold and of that set up.

If a partner in a firm engaged in a long established book trade, with a department for the sale of books used in and in connection with the Episcopal church, which is under his immediate personal control and direction, sells and assigns to his only partner all his interest in the business and its assets including all his interest in the good will of the business, and thereafter organizes a corporation bearing his name, which in the same city not far from the old place of business carries on a book selling business established principally to sell church books to persons of the Episcopal church, the partner who purchased the good will, or his assignee, may maintain a suit in equity against the partner who sold it and the corporation he has organized, to restrain the individual defendant from working for or holding stock in or being connected with the corporation and for an accounting for the damages which the plaintiff has suffered from that defendant's breach of his contract, and to enjoin the corporation from employing the individual defendant in its business or recognizing him as a stockholder except to permit him to sell his shares of stock or to receive what is due upon them on the winding up of the corporation.

On an appeal from a decree in equity where the whole case is before this court on a report of all the evidence without special findings of fact, the case is to be disposed of as it should have been disposed of by the judge who heard the evidence, except so far as the general finding of the judge after seeing the witnesses affects the case, and it is competent for the parties to put forward in this court contentions justified by the evidence which were not presented below.   More-

over this court in the exercise of its discretion may order any amendments to be made in the pleadings which are necessary to meet the case presented on the evidence.

LORING, J. This is an appeal from a final decree of the Superior Court dismissing the plaintiff's bill. It comes before us on all the evidence, without special findings of fact.

It appears from the evidence that the defendant Upham was employed as a clerk in the Old Corner Book Store from 1866 to 1872. In 1872 he became a partner and thereafter carried on the book trade at that store (as a partner or alone) until October 30, 1902, when he sold his interest therein to his then partner, George A. Moore. Moore paid Upham for his interest (it was a two thirds interest) in the partnership $35,000, and by the terms of the assignment Upham sold and assigned to Moore (among other things) all his interest in the stock in trade of the partnership " and all other assets of said firm and of the business heretofore conducted by said Moore and myself under the name of Damrell and Upham, and including all my interest in the good will of said business." In the following month, that is to say, in November, 1902, Moore organized the plaintiff corporation and sold and assigned to it all his stock in trade " and all other assets, pertaining to the business now carried on by me, and recently carried on by one Upham and myself, under the name and style of Damrell and Upham, including the good will of said business."

The defendant Upham then went abroad. On his return he was for a time engaged as the assistant treasurer of a milk company, and later in real estate and insurance business. In the summer of 1905 he conceived the idea of establishing a book store in Boston, primarily for the sale of books used in the Episcopal church, and secondarily for the general trade of a book store.

It appears in the evidence that from the time that Upham became an employee of the Old Corner Book Store until he sold his interest to Moore in October, 1902, a period of some thirty-six years, a part of the business carried on there was the selling of books used in or in connection with the Episcopal church. It further appears that Upham was employed in that department when he first came to the store; that from the

time when he became a partner until he sold his interest to Moore in 1902 that department of the business was under his special direction and control, with this qualification: During the last three years he had to devote himself to the financial affairs of the partnership and therefore left the church department more to one Wentworth, who, at the time the defendant corporation was organized, had been employed in that department of the Old Corner Book Store and its successor the plaintiff corporation, for ten years, with a short interruption.

The defendant Upham testified that while he was connected with the Old Corner Book Store that store was " the most prominent church depository" in Boston.  And by this we understand him to mean that it was the most prominent store in Boston for the sale of church books, or at any rate for the sale of Episcopal church books.  He further testified that the business of the new corporation was intended to be and was a business which was to compete with that of the plaintiff corporation.

The plaintiff corporation has continued the business sold to its assignor by the defendant Upham, including the church department just described, and as we have said Wentworth who in December, 1905, entered the defendants' employ then was conducting that department for the plaintiff.

The defendant Upham on his own testimony was and is very active in the Episcopal church.  He has been the treasurer of the Episcopalian Club since its organization about 1888.  This club consists of some two hundred or more Episcopalians.  It also appeared in evidence that he was treasurer of the Margaret Coffin Prayer Book Society, which seems to be a society for the sale or distribution of Episcopal prayer books.

After conceiving the idea of setting up a rival book store the defendant Upham's next move was to solicit personally and through some one employed by him for the purpose men prominent in the Episcopal church to subscribe to shares in a corporation to be organized to carry on the business which he proposed to set up.  Some of these men were admitted by him to have been customers of the Old Corner Book Store, and all of them were men in the Episcopal church.  He succeeded in getting thirty persons to subscribe to stock.

The result of this solicitation on the part of the defendant Upham was the organization of the defendant corporation on November 29, 1905. The name of the corporation was that of the defendant Upham, to wit, " H. M. Upham Company." The business of the corporation is stated in the agreement of association to be " To conduct a depository for the Episcopal church and to carry on a general book business and any other matters connected therewith." The corporation opened a store at No. 15 A, Beacon Street, on December 7, 1905. On December 23, 1905, this bill was filed. The suit went to a hearing on January 10 and 11, 1906, and the final decree dismissing the bill was entered on January 15, 1906.

It appeared that the plaintiff corporation had moved its store from the corner of Washington and School streets to Bromfield Street, and that it was situated there in November and December, 1905. It further appeared that this was five minutes' walk from the defendant corporation's store at 15 A, Beacon Street.

On the day before the opening of the store of the defendant corporation the defendant Upham sent some twelve hundred cards to persons in the residential part of Boston; he also sent cards to all the clergy of the diocese of Massachusetts.

So far as appeared the only persons employed in the store of the defendant corporation were the defendant Upham and Wentworth, who already has been spoken of as having been employed under Upham in the church department of the Old Corner Book Store. In November, 1905, Wentworth was an employee of the plaintiff, in charge of its church department, and he left that employment to enter into that of the defendant corporation.

We have not found it necessary to go into some further details attending the organization and make-up of the defendant corporation, nor into the circumstances under which Wentworth left the service of the plaintiff to take service with the defendant. The facts which have been stated were not in dispute, and those facts, in our opinion, are decisive of the merits of the suit now before us.

It is settled in this Commonwealth that when a man voluntarily sells the good will of his business he thereby precludes himself from setting up a competing business which will derogate from the good will which he has sold. *Angier* v. *Webber*,

14 Allen, 211.    *Dwight* v. *Hamilton*, 113 Mass. 175.    *Munsey* v. *Butterfield*, 133 Mass. 492.    *Webster* v. *Webster*, 180 Mass. 310, 315, 316.    *Hutchinson* v. *Nay*, 187 Mass. 262, 265.

In each case where the good will of a business is sold and the vendor sets up a competing business it is a question of fact whether, having regard to the character of the business sold and that set up, the new business does or does not derogate from the grant made by that sale.    In *Bassett* v. *Percival*, 5 Allen, 345, and in *Hoxie* v. *Chaney*, 143 Mass. 592, it was held that the new business did not derogate from the grant, while the contrary conclusion was come to in the cases before the court in *Angier* v. *Webber*, 14 Allen, 211, *Dwight* v. *Hamilton*, 113 Mass. 175, *Munsey* v. *Butterfield*, 133 Mass. 492.

In the case at bar but one conclusion can in our opinion be reached on that question of fact.

The good will sold included the good will of a department carried on for at least thirty-six years, and for the last thirty years under the immediate personal direction and control of the defendant Upham ; and that department was a department for the sale of books used in and in connection with the Episcopal church and was the most prominent department or store for the sale of such books in Boston during that period.    This business it should be remarked had a limited class of customers, for the customers are of necessity limited to those belonging to or interested in the Episcopal church.    The defendant under whose direction this department in the old business was conducted was and is prominent in and among Episcopalians.    It was under these circumstances that this defendant sold the good will of the business which included that department.

There could be no question as to the effect which the new business started by the defendant Upham was going to have upon the good will of the business which the defendant Upham sold, and which had come to the plaintiff.    We speak of the effect which the new business was going to have because the hearing took place only a month and three days after the new store was opened.

The new business is primarily to sell church books to Episcopal church people.    It was started at the solicitation of the defendant Upham, who is prominent in Episcopal church circles.

Its stockholders are all of them men of the Episcopal church, and its store is within five minutes' walk of the plaintiff's store.

The defendants have invoked the rule that the decree of a single justice who heard the witnesses is not to be set aside unless plainly wrong, citing *James* v. *Lewis*, 189 Mass. 134; *Dickinson* v. *Todd*, 172 Mass. 183; *Evans* v. *Strachan-Hanscom*, 171 Mass. 64. That is true. The reason of the rule is that the single justice who sees the witnesses has a better opportunity to decide on their credibility, and the rule is limited accordingly. For that reason the rule does not apply when all the evidence before the single justice is documentary. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. This rule does not confine the parties in this court to a consideration of points raised in the court below. The whole case is before this court, in case of an appeal on all the evidence, to be disposed of on that evidence as it should have been disposed of by the judge who heard it in the first instance, except so far as the fact that he has made a finding after seeing the witnesses affects the situation. It is competent for the parties to put forward in this court contentions justified by the evidence which were not raised below. And it is competent for this court in the exercise of its discretion to order all the necessary amendments to be made in the pleadings to meet the case made out on the evidence.

There is nothing therefore in the defendants' contention that the question which we have discussed here is not open in this case.

We are of opinion that, on the uncontradicted facts in the case at bar, if the business set up by the defendant corporation had been set up by Upham personally, it would have been in derogation of his grant, and that the plaintiff is entitled to an injunction perpetually restraining the defendant Upham from working for or holding stock in or otherwise being connected directly or indirectly with the defendant corporation; and to have an accounting as against the defendant Upham for the damages which it has suffered from his breach of contract. The plaintiff is also entitled to have the defendant corporation perpetually enjoined from employing directly or indirectly the defendant Upham in its business, or recognizing him as a stockholder therein or otherwise connected therewith except to allow him to sell his share

of stock or to receive what is due in respect thereof on the corporation being wound up.

The further rights of the plaintiff against the defendant corporation remain for consideration.  Its counsel has taken this position in his brief: " The corporation, H. M. Upham Company, was a *bona fide* corporation, and not merely H. M. Upham in another form.  It was composed of many stockholders besides Upham.  It had a right to its name — at least so far as the present plaintiff is concerned.  It had no contractual relationship of any kind with the plaintiff, and had not in fact received any transfer of any good will of Damrell and Upham.  It is difficult to see on what theory it did not have the right to engage in the retail book business and to solicit the customers of the old firm."

We agree that as matter of fact the defendant corporation is not Upham in another form.

We also agree that the day after Upham sold his good will to Moore, the persons (other than Upham) who now constitute the defendant corporation could have organized that corporation and opened a store for the sale of Episcopal church books, and, if they had pleased, could have opened that store in the building next to the Old Corner Book Store.

But the difficulty here is that the defendant corporation is not an independent body, and that it is the creation of the defendant Upham, brought into being by him in violation of the implied contract entered into by him with Moore in selling his good will to him.  The very name which it bears to-day and which it will bear hereafter is and must remain a mark in the trade of that fact.

What remedy the plaintiff is entitled to against the defendant corporation under the findings of fact which we have made has not been argued by counsel.  It is possible that it never will arise.  As the case must go back for an accounting in any event, we do not think it necessary to come to a decision on that point now.

*Decree accordingly.*

*A. H. Russell*, for the plaintiff.
*G. R. Nutter*, for the defendants.