ALVIN J. GORDON *vs.* JOHN W. KNOTT & others.

Suffolk.    March 25, 26, 1908. — May 22, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Good Will. Equity Jurisdiction,* Accounting.    *Evidence,* Foreign law, Presumptions and burden of proof.

A corporation engaged in the United States in the manufacture of rubber goods made a contract in writing with one whom it appointed its *del credere* agent in England by which goods were sent to the agent on consignment only, the title to them to remain in the company until they were sold to a customer, and full knowledge of all the details of the agent's operation, of his lists and of his customers was secured to the company. The agent acquired an extended knowledge of and large experience in the business of selling the company's goods, and a wide acquaintance with travelling salesmen in the business and with probable purchasers of such goods. Becoming dissatisfied with the working out of the contract, the parties. agreed to terminate it, and the agent executed and delivered to the company an assignment in writing which was drawn up by the company's solicitor and which stated that the agent " as beneficial owner hereby assigns to " a nominee of the company " all the leasehold premises upon which the business is carried on . . . and all the goodwill of the said business and all the plant, materials, stock in trade, book debts, and assets whatsoever," the company agreeing to account to the agent for the value of what was covered by the assignment. The company refused to account for the value of the good will, and the agent brought a suit in equity to compel it to do so, after a hearing in which the presiding justice found " that the plaintiff was the owner of something which the parties called a good will," which the defendant had agreed to pay for; and he ordered the accounting prayed for. The defendant appealed. *Held,* that the justice well might have found that the knowledge, experience, acquaintance and ability of the plaintiff constituted what the parties called a good will, which the plaintiff could not use after the assignment, and which might be found to be of value, and for which, therefore, in accordance with the agreement, the defendant should account to the plaintiff.

Upon the question of fact what the law of England is upon a particular subject, this court can no more consider statements made in one of their previous opinions than it can consider decisions of the English courts not put in evidence at the hearing.

In the absence of evidence, it cannot be presumed that the common or the commercial law of England differs from that of this Commonwealth.

BILL IN EQUITY for an accounting, filed in the Supreme Judicial Court for the county of Suffolk, May 14, 1901.

At the hearing, which was before *Morton*, J., the evidence was taken by a commissioner, and it appeared that, from the year 1884 to October 28, 1896, the plaintiff was engaged in

business in London, England, dealing largely in goods made by the defendant Boston Rubber Shoe Company, which goods, during the earlier part of the period, it sold outright to him, and, during the latter part of the period, consigned to him to be paid for after he had sold them. The course of dealing between the parties in the years 1894 to 1896, inclusive, was governed by various contracts in writing.

On October 28, 1896, the parties agreed to sever their relations, and an agreement in writing was executed by the plaintiff, by the defendant Leland on behalf of the defendant company, and by the defendant Knott, which provided as follows :

" 1. The said A. J. Gordon as beneficial owner hereby assigns unto the said John Wood Knott firstly all those the said leasehold premises upon which his said business is now carried on for all the residue of the term for which the same are now held, and secondly all the good will of the said business and all the plant, materials, stock-in-trade, book debts, and assets whatsoever to which the said A. J. Gordon is entitled and the benefit of all contracts and orders in connection with said business.

" 2. The said A. J. Gordon hereby irrevocably appoints the said John Wood Knott to be the attorney of him the said A. J. Gordon, in the name of the said A. J. Gordon or otherwise, to demand, sue for, recover and receive and give effectual receipts for the said book debts, assets and premises hereby assigned or any part or parts thereof and endorse checques in respect thereof.

" 3. Nothing herein contained shall in any wise affect the liability of the said A. J. Gordon in respect to any subsisting liability of the said A. J. Gordon to the Company or any settlement of accounts between the said A. J. Gordon and the Company."

The plaintiff contended and introduced evidence tending to show that the above agreement and assignment was made " upon the trust, agreement and understanding that the assignee, or the Boston Rubber Shoe Company, should thereafter account to the plaintiff for the property received thereunder."

It appeared in evidence that in August, 1895, the plaintiff and the defendant company made a detailed contract in writing as to the defendant's acting as the company's *del credere* agent,

goods to be consigned to him merely, the title to them to remain in the company until they were sold to a customer.

The plaintiff introduced a list of customers with whom he dealt as agent which contained something over sixteen hundred names and addresses, of which something over seven hundred showed addresses outside of the British Isles and the remainder within the British Isles, viz., in England, Ireland, Scotland, Wales, and adjoining islands. The addresses outside of the British Isles were distributed through Germany, France, Italy, Austria, Hungary, Holland, Belgium, Denmark, Norway, Sweden, Switzerland, and a few in Spain, Russia, Turkey, Roumania, Africa, South America, China, Japan, Australia.

The evidence to the introduction of which the defendant excepted, as stated in the opinion, was that the defendant's president, Converse, said to the plaintiff in 1884, before he went abroad at all, that he, Converse, considered the foreign business of no value. " If I could do business with the foreigners I was quite welcome to do it and he would be glad for me, but he didn't think it would be a success." That the defendant's treasurer, Leland, said to him, in connection with the signing of the contract of 1894, that the company proposed by the contract " to consign goods to me instead of selling to me, that it would help me from the fact that there would be no interest on goods carried in warehouse in London, and that, with that exception, the relations would be continued the same between the company and myself."

The defendant also excepted to the admission in evidence of conversations between the plaintiff and Leland just before the assignment of October 28, 1896, the substance of which was that after the two had been to see another company which was seeking the plaintiff's " business," they had a talk, the result of which was contained in the following:

" As to my question to him, Would he put a price on the good will of my business, he said he would pay me for it whatever it was worth. I asked him to put it in writing. He would not do that — said his word had never been doubted. . . .

" There was a talk about what constituted good will. . . .

" I showed him the file of my letters from customers ; I showed him my letter book, and told him, 'There is where the good will

is ' ; I told him if I turned over the business to him, this good will ' would not be mine, it would be yours ; if I have a letter I cannot answer it.' He said ' That is true ; we take the business as you leave it, — whatever there is here we will pay you for.' I asked him to put it in writing, — to put those answers in writing, and he refused to do it."

The single justice made the following finding :

" The last instrument executed by the parties was the transfer from the plaintiff to the defendant of October 28, 1896. This recites that the plaintiff is the beneficial owner of the good will. From this and other evidence I find as a fact that the plaintiff was the owner of something which the parties called a good will. And I find from the evidence before me that the defendant through its agent agreed in consideration of the transfer of the good will and other property to pay the plaintiff for such good will. The plaintiff testified that there was such an agreement. Abbott [the plaintiff's bookkeeper] testified that the agent agreed with the plaintiff that the company should satisfy him, and it seems to me that the circumstances are more consistent with the view that there was a promise to pay for the good will than that there was not. Therefore I find for the plaintiff."

Accordingly he ordered a decree for the plaintiff, and, at the request of the defendant, reported the case for consideration by the full court.

*C. R. Darling*, for the plaintiff.

*E. R. Thayer*, for the defendants.

SHELDON, J. The principal question argued in this case is whether the finding made by the single justice, " that the plaintiff was the owner of something which the parties called a good will," and that the Boston Rubber Shoe Company, hereinafter called the defendant, agreed to pay the plaintiff for this *quasi* good will, should be reversed. Under the recognized rule, it is to be sustained unless upon the evidence reported it was clearly wrong. *Elliott* v. *Baker*, 194 Mass. 518. *Lindsey* v. *Bird*, 193 Mass. 200.

There is great force in the defendant's contention that, as the business which the plaintiff was carrying on in London in October, 1896, was and for two years had been carried on by him merely as the agent of the defendant, and as the rubber boots

and shoes which constituted the stock in trade had been merely consigned to him by the defendant for sale, and it was his duty only to sell them for the defendant, so the business was the defendant's business, and the good will of that business was the defendant's own property and did not belong to the plaintiff at all. So far as the good will of the business depended upon the reputation of the goods which had been sold, that belonged to the defendant. So far as it depended upon the possession of a valuable list of customers in various countries who would buy rubber boots and shoes, and the consequent ability to communicate readily with probable purchasers of such goods and thus to effect larger sales at a less expense and with less trouble than otherwise would be the case, full knowledge of all these particulars was already secured to the defendant by the agreements made between itself and the plaintiff on April 2, 1894, and August 1, 1895, respectively. So far as the good will depended upon the effect of the plaintiff's personality in the business, the defendant rightly says that this was not included in what the plaintiff turned over to Knott for its benefit.

But it could be found that these considerations do not cover the whole of the existent good will of this business. The plaintiff had built up a very large trade in England and other foreign countries; and, although this does not appear to have been profitable, yet so extensive a connection as he had formed might under a wiser management or more fortunate circumstances be capable of returning large gains. At any rate, the defendant regarded it as worth while to take a transfer not only of all the assets of the business and of the plaintiff's leasehold estate in the premises in which it was carried on, but also of the good will, of which the plaintiff was called in the assignment the beneficial owner. The plaintiff himself, according to one part of the evidence, specified his good will as consisting of or situated in his file of letters from customers. It may be conceded that the plaintiff, before making the actual transfer and delivery to the defendant's nominee of what the defendant was really entitled to receive, could not have copied for his own future benefit the accounts or the letters or the names of customers with whom he had dealt only as the defendant's agent and for its benefit. Bowen, L. J., in *Helmore* v. *Smith*, 35 Ch. D. 449, 456. *Lamb* v.

*Evans*, [1893] 1 Ch. 218, 226.   *Robb* v. *Green*, [1895] 2 Q. B. 1.
But the personal knowledge which the plaintiff had acquired of
the business of selling rubber boots and shoes was great; his
experience in it had been large; his acquaintance both with the
travelling salesmen through whom apparently sales were gen-
erally made, and with probable purchasers of such goods, was
extensive.   It well might have been within the contemplation of
both parties that he could secure an ample supply of such mer-
chandise from other sources, and become so troublesome a com-
petitor with the defendant in the business which it was taking
up through Knott, as to make all the difference between a profit
and a loss to the defendant in the prosecution of that business.
Apparently there was nothing to prevent the plaintiff from tak-
ing that course; and this knowledge, experience, acquaintance
and ability of his might well be found, as apparently it was found
by the single justice, to constitute what the parties to this agree-
ment called a good will.

So far as there was such a good will, it was transferred to the
defendant.   After the transfer, the plaintiff, under our decisions,
could not derogate from his grant by engaging in a competing
business of the same kind, selling the same goods, and endeavor-
ing to deal with the same customers.   *Old Corner Book Store* v.
*Upham*, 194 Mass. 101.   *Munsey* v. *Butterfield*, 133 Mass. 492.
*Dwight* v. *Hamilton*, 113 Mass. 175.   *Angier* v. *Webber*, 14 Allen,
211.   Such a case as is now before us would be governed by the
rule of these decisions, and would not come under the doctrine
of *Hoxie* v. *Chaney*, 143 Mass. 592, and *Bassett* v. *Percival*,
5 Allen, 345.   See the opinions in *Old Corner Book Store* v.
*Upham*, and *Hoxie* v. *Chaney*, *ubi supra*, and *Webster* v. *Webster*,
180 Mass. 310, in which the distinction between these two classes
of cases is stated.   The case at bar is peculiarly one in which
the plaintiff could not have set up a competing business without
derogating from his grant of the good will of the old business.

But the defendant contends that whatever the rule might have
been if this agreement had been made in Massachusetts, the rule
adopted in the English courts is different; and that this, being
an English contract drawn by English solicitors, who must be
presumed to have had in mind the decisions of their own courts,
must be governed by the English law.   This may be conceded.

And the defendant contends that under the law of England the plaintiff could not be restrained from setting up a competing business.    He relies upon the language of Loring, J., in *Hutchinson* v. *Nay*, 187 Mass. 262, 264, in which it is shown that the rule of *Labouchere* v. *Dawson*, L. R. 13 Eq. 322, to the effect already stated, although since doubted or denied in other cases, has been finally confirmed by the House of Lords in *Trego* v. *Hunt*, [1896] A. C. 7.    But to this contention there are two answers.

In the first place, even if this rule were applied to the contract before us, the plaintiff, under the agreement which he has made, would not be allowed to solicit orders from his former customers, even though he might set up a competing business.    Accordingly the extent and value of the good will which he had transferred to Knott, though much diminished, would not be wholly destroyed.    But, in the second place, the real answer to this contention is that when, in a contest in our own courts, the rights of the parties depend upon any foreign law, what that law is is purely a question of fact, to be determined by such evidence as may be offered thereof.    R. L. c. 175, §§ 71, 75, 76.    *Demelman* v. *Brazier*, 193 Mass. 588.    We do not find that there was any evidence of the law of England as to this matter before the single justice; and we cannot ourselves consider evidence which was not introduced before him.    But in the absence of evidence, it cannot be presumed that the common or the commercial law of England differs from ours.    *Callender, McAuslan & Troup Co.* v. *Flint*, 187 Mass. 104.    *Cherry* v. *Sprague*, 187 Mass. 113. *Mittenthal* v. *Mascagni*, 183 Mass. 19, 23.    *Chase* v. *Alliance Ins. Co.* 9 Allen, 311.    Upon this question of fact, we can no more consider statements made in the reasoning adopted in the opinions of our own court than decisions in the English courts not put in evidence at the hearing.    Accordingly this contention of the defendant must fail.

It may be added that the words of the agreement in question in which the plaintiff is called the beneficial owner of the property assigned are not without weight upon the question, though their probative value is of course much lessened, both by the fact that he was in no sense the beneficial owner of much of the property assigned, and by the further fact that Leland, who rep-

resented the defendant in the negotiations that preceded the making of the assignment, had refused in those negotiations to admit that the plaintiff owned any good will in the business. On the whole, we are satisfied that the finding of the single justice upon this question was warranted by the evidence and cannot be set aside; and it is conceded that in that event the further finding that the defendant had agreed to pay for this something in the nature of a good will was also warranted.

It is very difficult, to be sure, to see how such a qualified and limited good will could have any considerable pecuniary value; but that question is not before us. After the decree that the plaintiff is entitled to an accounting shall have been entered, the value of this good will, as well as of the leasehold premises and his office furniture and of any commissions to which the plaintiff may have become entitled, and of any part of the deposit in the Bank of England that may be found to have been his private property, as well as the amount of the Albert L. Gordon note, and the amount of the plaintiff's indebtedness to the defendant, will all be open for investigation either before a single justice or before a master.

As to the testimony, the admission of which was excepted to, we are of opinion that, so far as it has not turned out to be immaterial, it was admissible to prove the promise of the defendant to pay the plaintiff for his good will and to show the meaning put by the parties upon that term, and the conditions which existed while the contract was under consideration. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193, and cases there cited.

Accordingly, a decree will be entered declaring that the plaintiff is entitled to an accounting with the defendant as already stated.

*So ordered.*