MARSHALL ENGINE COMPANY *vs.* NEW MARSHALL ENGINE COMPANY & another.

Franklin.   September 28, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction,* To vacate decree, To enforce implied negative contract.   *Equity Pleading and Practice,* Decree.   *Good Will.   Assignment.   Sale.   Patent. Estoppel.*

After a final decree in a suit in equity has been entered, the court which made the decree has no power to vacate it.

Where the owner of a patent for improvements in a certain kind of machine, who is engaged in manufacturing and selling the machines made under his patent, makes an assignment of the patent, and also by the same instrument assigns the good will of his business "with the exclusive use of any and all words, indicating that the business is carried on in succession or continuation thereof and trademarks and trade names connected therewith," this grants no exclusive right to use, after the expiration of the patent, the words by which the machines made under the patent were designated, such right ceasing with the termination of the patent.

If one who is the owner of the good will of a business of manufacturing and selling to paper manufacturers a certain kind of machine for reducing pulp to paper, and of repairing and furnishing parts of such machines, who has brought his machines to the attention of the public by advertising them in trade journals, sells and assigns the good will of his business, with the exclusive use of any and all trade names connected therewith, to a corporation organized to acquire and carry on that business, the sale of the good will includes an agreement not to carry on a competing business anywhere, the business not being local, and if, after such a sale, the seller, with the intention of injuring and defrauding the purchaser, advertises in a journal, published in connection with the paper trade, a machine which he describes as having all the valuable features of the machine which he manufactured formerly with certain new and valuable features, and makes and sells machines under the old trade name, and otherwise attempts to carry on his former business, he can be restrained in equity from doing these things.

An agreement never to engage in the business of manufacturing or selling a certain kind of machine, even though unlimited in time and space, is valid if it is coupled with the sale of a business and is necessary to give the purchaser what he has bought, and therefore such an agreement can be implied as a necessary part of the sale of the good will of a business.

*It seems,* that one who, describing himself as the owner, sold and assigned by an instrument in writing a certain patent and the good will of a business, for a valuable consideration which he received, in a suit in equity against him by the purchaser founded on the instrument of sale and assignment is estopped to show that he did not own the patent or the good will which he assigned.

BILL IN EQUITY, filed in the Superior Court on December 7, 1906, by the Marshall Engine Company, a corporation established under the laws of the State of New Jersey, through its receiver, to restrain the defendant the New Marshall Engine Company, a corporation established under the laws of this Commonwealth, and the defendant Frank J. Marshall from using the name " Marshall " in connection with the business of manufacturing, repairing, buying, selling and otherwise dealing in and with the engine known as " Marshall's Perfecting Engine " and with any pulp-beating engines whatsoever; from using the trademarks and tradenames " Marshall " and " Marshall's Perfecting Engine " in connection with such manufacturing, repairing, buying, selling or otherwise dealing in and with pulp-beating engines; from receiving mail matter addressed to the " New Marshall Engine Company "; for an order that mail matter so addressed be sent to a master to be appointed by the Superior Court to receive, open and read such mail matter, with instructions to forward that pertaining to said engine business to the plaintiff and all other to the defendant Frank J. Marshall; and for an accounting.

The contract between the defendant Frank J. Marshall and the plaintiff, containing the assignment on which the suit was founded and made a part of the bill, was as follows:

" The Marshall Engine Company.
" Agreement for the Purchase of Property.

" An agreement made this 15th day of September, 1902, by and between F. J. Marshall, hereinafter called the ' vendor,' of the first part, and ' Marshall Engine Company ' a corporation organized under the laws of New Jersey (hereinafter called the ' company '), of the second part,

" Whereas the vendor is the owner of the property and rights hereinafter described; and

" Whereas the company has been duly organized with an

authorized capital stock of $50,000 divided into shares of the par value of $100; and

" Whereas the board of directors of the company have ascertained, adjudged and declared that the said property and rights are of the fair value of forty-five thousand dollars ($45,000) and that the acquisition thereof is necessary for the business of the company to carry out its contemplated objects.

" Now therefore this agreement witnesseth:

" I. That the vendor has sold, assigned, transferred and set over and does hereby sell, assign, transfer and set over unto the company, its successors and assigns, all his right, title and interest in and to the following described property, to wit:

" United States Letters Patent, No. 342,802 for improvement in Engines issued to Frank J. Marshall June 1, 1886, and all improvements thereon and renewals of the same.

" The good will of the business carried on by the vendor under the firm name of ' F. J. Marshall,' the head office being located at 309 Broadway, New York City, together with the exclusive use of any and all words, indicating that the business is carried on in succession or continuation thereof and trade marks and trade names connected therewith.

" Also plants, machinery, office furniture, books of account and otherwise, patents, licenses, stock in trade, implements and interests in which the vendor is entitled in connection with such business.

" Also all book or other debts owing to them and the full benefit of all security therefor.

" Also all other property and rights of whatsoever nature or kind used by the vendor in its said business.

" II. The company agrees, in consideration of said sale and upon the delivery of said property to it, to issue to the vendor and his nominees as hereinafter provided, and to such other nominees as the vendor shall in writing hereafter direct, at such times and in such amounts as they shall respectively direct, certificates of stock of the company to the aggregate amount of four hundred and fifty shares, and said shares shall be deemed to be and are hereby declared to be full-paid shares and not liable to any further call, and the holders of such stock shall not be liable to any further payment thereon.

" III.  Said stock shall be issued as follows:

| To the vendor | Shares |
| --- | --- |
| F. J. Marshall | 447 |
| H. H. Picking | 1 |
| Wm. R. Roland, | 1 |
| F. L. Miner | 1 |

" IV.  The delivery of the certificates of said shares to the above named parties and their respective receipts for the same shall be a full discharge of each of the parties hereto to the extent thereof.

" V.  The vendor hereby covenants and agrees with the company, on the request and at the cost of the company, to execute and do all such further assurances and things as shall reasonably be required by the company for vesting in it the property and rights agreed to be hereby sold, and giving to it the full benefit of this agreement.

" Witness the hand and seal of the vendor and the corporate seal of the company, attested by the signatures of its officers thereunto duly authorized, the day and year first above written.

" In presence of :

" C. M. Abbe

" F. J. Marshall          (Seal)

" Marshall Engine Company

(Corporate Seal)          " By Frank R. Serles

President

" Attest :  Walter H. Bond

Secy."

In the Superior Court the case was heard by *Fessenden,* J., upon exceptions to a master's* report, which he dealt with as stated in the opinion.  He made a final decree for the plaintiff as follows :

" 1.  That the defendants, Frank J. Marshall and New Marshall Engine Company, and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them, be perpetually enjoined and restrained, from in any form or manner whatsoever, engaging in or carrying on the business of

* The master was Samuel D. Conant, Esquire.

manufacturing, repairing, buying, selling and otherwise dealing in and with, the engine known as 'Marshall's Perfecting Engine' and with any and all pulp-beating engines whatsoever like or similar to said 'Marshall's Perfecting Engine.'

"2. That the defendants, Frank J. Marshall and New Marshall Engine Company, and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them, be perpetually enjoined and restrained, from in any form or manner whatsoever, using the names, trade marks and trade names, 'Marshall' and 'Marshall's Perfecting Engine' in connection with the business of manufacturing, repairing, buying, selling and otherwise dealing in and with, the engine known as 'Marshall's Perfecting Engine' and with any and all pulp-beating engines whatsoever like or similar to said 'Marshall's Perfecting Engine.'

"3. That the defendants, Frank J. Marshall and New Marshall Engine Company, and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them, be perpetually enjoined and restrained, from in any form or manner whatsoever, using the name 'Marshall Engine Company,' and the name 'New Marshall Engine Company' in connection with the business of manufacturing, repairing, buying, selling and otherwise dealing in and with, the engine known as 'Marshall's Perfecting Engine' and with any and all pulp-beating engines whatsoever like or similar to said 'Marshall's Perfecting Engine.'

"4. That the defendants, Frank J. Marshall and New Marshall Engine Company, and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them, be perpetually enjoined and restrained from asking, accepting, taking or receiving from the post office at Turner's Falls, County of Franklin, State of Massachusetts, or from the postmaster at said Turner's Falls or elsewhere, or any deputy or assistant postmaster, or clerk or employee of said postmaster, at Turner's Falls or elsewhere any letters or other mail matter or packages of any kind, addressed or directed to 'New Marshall Engine Company' or 'Marshall Engine Company' directly or indirectly relating to the business and the good will acquired by the plaintiff as set forth in the plaintiff's bill or from opening

the same or in any manner interfering with or delaying or impeding the delivery of any such letters or mail matter or packages to the plaintiff, by the postmaster at said Turner's Falls or elsewhere, or his deputy or assistant or clerks or any of them, as soon as the same are received in due course of mail.

" 5. That the defendants and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them, be perpetually enjoined and restrained from interfering, directly or indirectly, with the good will acquired by the plaintiff as set forth in its bill.

" 6. That the said defendants, and each of them, their agents, attorneys and servants, and all persons acting or claiming under any of them be perpetually enjoined and restrained from soliciting, or receiving, directly or indirectly, the trade and business of customers of the plaintiff.

" 7. That the said Frank J. Marshall be perpetually enjoined and restrained from working for or holding stock in or being otherwise connected with, directly or indirectly, the said New Marshall Engine Company, and that the said New Marshall Engine Company, be perpetually enjoined and restrained from employing the said Frank J. Marshall, his agents, attorneys, and servants, and all persons acting or claiming under him, directly or indirectly, in its business, or recognizing him as a stockholder therein or as otherwise connected therewith, except to allow him to sell or assign his shares of stock or to receive what is or may be due in respect thereof, in the event of the said New Marshall Engine Company being wound up.

" 8. That the defendants, Frank J. Marshall and New Marshall Engine Company forthwith pay to the plaintiff the sum of sixty-seven dollars and eighty three cents as and for the costs of this suit, and that execution issue therefor."

The defendant appealed from the decree.

Later, as stated in the opinion, the plaintiff made a motion that the decree be vacated, and that a new decree be entered in the same words with an addition at the end of paragraph 4 relating to mail matter at Turner's Falls. The judge denied the motion, and the plaintiff appealed.

*F. J. Lawler,* (*L. W. Griswold* with him,) for the defendants.

*F. L. Greene,* for the plaintiff.

LORING, J.   The parties to this suit are the same as those to the suit reported in 199 Mass. 546.   This suit was begun about a year after the bill in the other suit was filed.   Both suits are founded on the agreement of September 15, 1902, between the defendant F. J. Marshall and the plaintiff corporation, by which Marshall assigned to the plaintiff corporation (1) a certain patent "and all improvements thereon," and (2) "the good will of the business carried on by the vendor under the firm name of ' F. J. Marshall,' the head office being located at 309 Broadway, New York City, together with the exclusive use of any and all words, indicating that the business is carried on in succession or continuation thereof and trademarks and trade names connected therewith."   The other suit was brought to obtain an assignment of a patent for an improvement.   This suit is brought to secure the rights to which the plaintiff was entitled as the assignee of the good will of the business assigned to it by Marshall in that agreement.

The suit now before us was referred to a master.   Exceptions to his report were taken by both parties.   Two of the exceptions taken by the plaintiff were sustained.   The others taken by it and all those taken by the defendants were overruled.   The report so modified was confirmed, and on May 15, 1909, a final decree was entered in favor of the plaintiff.   The case is before us on an appeal by the defendants from the decree confirming the master's report with the modifications above stated, and from the final decree.

On July, 17, 1909, some two months after the entry of the final decree, the plaintiff moved to have that decree vacated and a decree entered which added a clause to the fourth paragraph of it.   This was denied, and an appeal was taken by the plaintiff from the order and decree denying this motion.   After the entry of a final decree in a suit in equity the court which made the decree has no power to vacate it.   The jurisdiction of the court is at an end.   *Lakin* v. *Lawrence*, 195 Mass. 27, and cases cited. For this reason the plaintiff's appeal was not well taken.

It appears from the master's report, as amended by the Superior Court, that in 1886 a patent was granted to F. J. Marshall for reducing wood pulp to paper.   Shortly after the granting of these letters patent Marshall formed a partnership which caused

engines to be manufactured for it by others under this patent, and called them the "Marshall Perfecting Engines." This business of the partnership was done at Turner's Falls, Massachusetts. In 1888 and 1896, sales were made by the several partners which resulted in F. J. Marshall's becoming in 1897 the sole owner of the business. The master finds that " a considerable number " of these engines were placed upon the market and put in use by the partnership up to 1897. In 1897 a Massachusetts corporation was formed, with a capital of $60,000, of which the master found that Marshall acquired " the principal part." The name of this corporation was " The Marshall Engine Company." The office of the corporation was at Turner's Falls. It manufactured the " Marshall Perfecting Engine " until " some time in the summer of 1902." The words " Marshall Perfecting Engine " were cast upon all engines so manufactured. There was also placed upon these engines the words " Patented June 1st, 1886, by Frank J. Marshall, built by Marshall Engine Company, Turner's Falls, Massachusetts." The master finds that during this period also " a considerable number of these engines were placed upon the market and put to use in different mills."

Later, at a time not stated by the master, " until the incorporation of the plaintiff in September, 1902," the business was carried on by F. J. Marshall alone, under the name of the Marshall Engine Company.

" During all this time, from 1886 to Sep. 15, 1902, the said Frank J. Marshall was active in the management of the business, travelling to a greater or less extent in its interests, carrying on the correspondence, making and arranging contracts of different kinds for advertising and selling engines and in promoting the business, and he was practically the business man and principal factor in carrying on the business, and it did not appear that any other person was actively engaged during any substantial portion of time in developing and promoting the business of building and selling these engines. In the early part of 1902, and for several months prior to the incorporation of the plaintiff, the said Frank J. Marshall carried on business himself at 309 Broadway, New York City, in an office in connection with the Marshall Paper Company."

On September 13, 1902, the plaintiff corporation, called the Marshall Engine Company, was incorporated in New Jersey. Its capital stock was $50,000, $5,000 being preferred and $45,000 common. All the common stock was issued to F. J. Marshall for the assignment of the patent and all improvements thereon, and the good will of the business under the agreement of September 15, 1902, which is the foundation of this and the other suit. The office of the plaintiff corporation, from the time of the incorporation until October 12, 1904, was at 309 Broadway, New York City. The plaintiff manufactured and sold nine or ten Marshall Perfecting Engines, and did " considerable repairing." Some agents were sent out by it to solicit business. On October 12, 1904, the office of that company was closed. From the time of the closing of the office of the plaintiff at 309 Broadway on October 12, 1904, until June 13, 1905, when the receiver was appointed as hereinafter stated, Marshall, on his own account and with his own funds, did " certain business in connection with the Marshall Perfecting Engine " at Turner's Falls, Massachusetts, consisting of repairs and furnishing of fillings for engines then in use. By a decree of the Court of Chancery of New Jersey, dated June 15, 1905, the plaintiff corporation was decreed to be insolvent and a receiver was appointed to take over its affairs. Later the same person was appointed a receiver in Massachusetts.

Eight days afterward, to wit, on June 21, 1905, F. J. Marshall caused the "New Marshall Engine Company " to be incorporated in Massachusetts, with a capital of $50,000, $45,000 being common stock. Marshall " received the entire common capital stock of the corporation, consisting of four hundred and fifty shares, except one share." It appears from the master's report as amended by the Superior Court that this was done with intent to injure and defraud the plaintiff. It does not appear that any of the preferred stock has been issued. It is found by the master that " Marshall received the money of the company and paid the bills and kept the accounts upon a slate, which he afterwards erased."

It further appears from the master's report that from 1886 to the incorporation of the Marshall Engine Company of Massachusetts in 1897, the Marshall Perfecting Engine always had

been advertised in trade journals and in papers published in connection with the paper trade, and that, after the incorporation of the Marshall Engine Company of Massachusetts in 1897, " the advertising of these ' Marshall Perfecting Engines ' continued in many trade journals and papers for considerable lengths of time, and more or less extensively. Cuts of this machine were published, and the advertising appeared upon the stationery and bill heads, and one of these engines was placed on exhibition at the World's Fair in Chicago in 1893."

" The letter heads and bill heads used under date of 1902, and before the incorporation of the plaintiff, were headed:

' Factory at                Marshall Engine Co.
Turner's Falls, Mass.         Manufacturers of
F. J. Marshall, Treas.     F. J. Marshall's Perfecting Engine,
                      708 Mutual Reserve Building,
                 No. 309 Broadway, New York.' "

" In reference to trade names it appeared that . . . these engines had always been advertised, in trade journals and in papers published in connection with the paper trade, by letter headings, bill headings and otherwise, as ' Marshall Engines,' ' Marshall Perfecting Engines,' ' New Marshall Perfecting Engine,' and were well known to the public and to the trade as such."

The master ruled as matter of law on the facts and evidence set forth in his report " that the words, ' Marshall Perfecting Engine,' and ' Marshall's Perfecting Engine,' as used in connection with said business carried on under said patent of June 1, 1886, became trade names or trade marks, and became the property of the plaintiff under said assignment; that the trade names and trade marks and the good will attached thereto and to the business, embraced in said assignment, were not limited in operation to the life of the patent of June 1, 1886, and were not, as to the defendants, surrendered up to the general benefit of the public upon the expiration of said patent, and that the business carried on by the said defendants Frank J. Marshall and the New Marshall Engine Company at Turner's Falls, after the incorporation of said New Marshall Engine Company, June 21, 1905, was in derogation of the grant to the plaintiff by said as-

signment, without right, and in violation of the legal rights of the plaintiff, and that the plaintiff is entitled to an injunction restraining the same," and this is the foundation of the final decree in this suit.

We are of opinion that this ruling is not correct. Not only that, but we find as a fact, on the facts stated in the master's report, that the words " Marshall Perfecting Engine " and "Marshall's Perfecting Engine" are words designating the engine manufactured under the patent granted to Marshall in 1886; and that on the expiration of that patent in 1903 the right to the exclusive use of these words ceased. The case comes within the rule laid down and fully stated in *Dover Stamping Co.* v. *Fellows*, 163 Mass. 191 ; *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83 ; *Singer Manuf. Co.* v. *June Manuf. Co.* 163 U. S. 169. The decree below cannot stand on the ground that these words are in fact trade names assigned to it by Marshall.

If the decree below is to stand it must stand on the ground that the business set up by Marshall under the name of the New Marshall Engine Company does in fact derogate from the grant made by him in the sale to the plaintiff of the good will of the business sold by him to it.

On the facts disclosed in the record, the New Marshall Engine Company is F. J. Marshall in another form. The defendant Marshall began the new business when the office of the plaintiff corporation was closed in October, 1904, and no real change was made by the incorporation of the New Marshall Engine Company on June 21, 1905. The case stands as if F. J. Marshall were the sole defendant.

It was laid down by this court in *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 105, that: " In each case where the good will of a business is sold and the vendor sets up a competing business it is a question of fact whether, having regard to the character of the business sold and that set up, the new business does or does not derogate from the grant made by that sale. In *Bassett* v. *Percival*, 5 Allen, 345, and in *Hoxie* v. *Chaney*, 143 Mass. 592, it was held that the new business did not derogate from the grant, while the contrary conclusion was come to in the cases before the court in *Angier* v. *Webber*, 14 Allen, 211, *Dwight* v. *Hamilton*, 113 Mass. 175, *Munsey* v. *Butterfield*, 133

Mass. 492." For subsequent cases see *Foss* v. *Roby*, 195 Mass. 292; *Gordon* v. *Knott*, 199 Mass. 173.

In considering the previous decisions of this court in order to determine whether in a particular case the competing business does or does not derogate from a grant of the good will, it may be of importance to bear in mind when they were decided and the state of the law at the time.

*Bassett* v. *Percival*, 5 Allen, 345, was decided in 1862. It was there stated that the sale of the good will then in question " was nothing more than a sale of the custom or trade which appertained to the place where the vendor was then carrying on his business. This was the real subject matter of the contract between the parties, and it cannot be construed as imposing any personal restraint on the vendor, or as restricting his right to transact a similar business in another place at a subsequent time. Whenever such is the intent of the parties, it is carried into effect by an express stipulation, which, if not in undue restraint of trade, may be valid and binding. But we know of no case where any such agreement has been raised by mere implication, arising from the sale of the good will of a person's trade, in connection with a particular place of business where it has been carried on."

This however was modified in *Angier* v. *Webber*, *Dwight* v. *Hamilton* and *Munsey* v. *Butterfield*, *ubi supra*. In those cases it was held that the several sales of good will there under consideration did raise by implication agreements not to carry on a competing business which would interfere with the grant of the good will sold. These cases were reviewed in *Hoxie* v. *Chaney*, 143 Mass. 592. But in *Hoxie* v. *Chaney* there was not a sale of the good will, *eo nomine*. It was there held that a sale by one partner to another of " the following goods and chattels, namely: All my right, title and interest in and to all and singular the partnership property . . . meaning hereby to sell and convey . . . all my interest in the entire assets of said firm, wherever the same may be situated," included a sale of the good will; and it was assumed that a case where there was such an implied sale of good will stood on the same footing as an express sale and grant of it so far as the question now under discussion is concerned. It is also to be remarked of *Hoxie* v. *Chaney* that it was there

assumed that the law of England and the law of this Common-
wealth were the same as to the rights and burdens consequent
on the sale of the good will of a business.    It was not until the
decision of this court in *Hutchinson* v. *Nay*, 187 Mass. 262, that
the difference was pointed out between the law which had then
been established in England and that established here on the
point.    It is there pointed out that in England a competing busi-
ness always can be set up by one who has sold his good will; and
that a purchaser of a good will in England gets nothing more
than the right to have the vendor refrain from soliciting business
from the customers of the old firm.    The law in England is well
stated in Lindley, Law of Partnership, (7th Eng. ed.) 477.
While in Massachusetts no competing business can be set up if
it derogates from the grant of the good will of the old business.

Under what is now the settled law of this Commonwealth,
cases may be put where the sale of the good will would not
prevent the vendor from setting up a similar business.    For
example, one who sells the good will of a small grocery store in
the south end of Boston without doubt might set up a small
grocery store in the north end of the same city.    Customers of
small grocery stores are those living in the immediate neighbor-
hood, and a similar store in another locality would not affect the
rights acquired by the purchaser of the good will of the first store.

On the other hand had there been no covenant in the sale by
Nordenfelt of his good will as a manufacturer of guns and am-
munition, which was before the House of Lords in *Nordenfelt* v.
*Maxim Nordenfelt Guns & Ammunition Co.* [1894] A. C. 535,
under the Massachusetts rule he could not have set up a similar
business anywhere.    Where the governments of the world are
the customers, the place of business is of no consequence.

We are thus brought to the question whether the business set
up by Marshall in October, 1904, and continued under the name
of the New Marshall Engine Company since June 21, 1905, inter-
feres with the rights of the plaintiff as the purchaser of the good
will sold to it by Marshall in 1902.

In the first place, what was the business carried on by the
defendant Marshall in September, 1902, when he sold the good
will of his business to the plaintiff corporation?    That is best
understood by rehearsing the history of it.    It began in 1886.

It was then carried on by a partnership until 1896, then by Marshall until 1897, then by a Massachusetts corporation (which was Marshall in another form), then by Marshall in his own name, and later by Marshall alone under the name of the Marshall Engine Company. While it was being thus carried on by him the good will of it was sold to the plaintiff corporation. The business consisted in manufacturing or having manufactured for it, or him, Marshall Perfecting Engines, buying and selling those engines, and repairing, and furnishing "fillings" for such engines.

The business done by the defendant Marshall under his own name from October, 1904, until the incorporation of the defendant corporation and after that time in the name of the corporation, was the same. The defendant corporation "advertised 'The New Marshall Perfecting Engine,' with a cut of the engine, in the Paper Mill and Wood Pulp News, a journal published in connection with the paper trade, and that this advertisement had been inserted weekly during a large part of the time to the present. This engine was advertised as having 'all of the valuable features of the original Marshall Perfecting Engine, and many new and valuable features.' These 'new and valuable features' were not patented, under any patent, and the advertisement was in fact of the Marshall Perfecting Engine, the patent of which expired in 1903, with certain additions and changes, which were not patented." It built and sold two large "Marshall's Perfecting Engines," constructed along the lines of the original "Marshall Perfecting Engines," made repairs, furnished "fillings," and bought and sold and had on hand parts of Marshall second hand engines.

The good will of the business of selling engines to reduce pulp to paper is manifestly one not dependent on the place where it is carried on. A paper manufacturer is not concerned where he buys his machinery. What he wants is the best made machine at the cheapest price. This would seem to be so from the nature of the thing dealt in, and is apparent from the fact that the business of the plaintiff and its predecessors and that of the defendants has been brought to the attention of the public by advertisements in trade journals. The repairs and worn out parts naturally are bought of the manufacturer or setter up of

the machine. We cannot doubt that the business set up by the defendant is a competing business which injures the rights bought by the plaintiff when it bought the good will of Marshall's business.

It was found as a fact in the Superior Court that what Marshall did in connection with the incorporation of the New Marshall Engine Company was done with intent to injure and defraud the plaintiff. This suit is brought in effect by creditors of the plaintiff corporation (through the receiver of it) to enforce the rights secured by the corporation from Marshall in the purchase from him of the good will of the business then carried on by him.

The defendants have argued that if Marshall had entered into a covenant never to engage in the business of manufacturing Marshall Perfecting Engines it would have been void as a covenant in restraint of trade. But it is now settled that a covenant, even if it be unlimited both in time and space (*United Shoe Machinery Co.* v. *Kimball*, 193 Mass. 351, 358), not to engage in a particular business is valid if it is coupled with the sale of a business and is necessary to give to the purchaser what he has bought. *Anchor Electric Co.* v. *Hawkes*, 171 Mass. 101. *United Shoe Machinery Co.* v. *Kimball*, 193 Mass. 351. The ground on which it is held that a covenant not to engage in a business similar to that sold is valid when expressed, is the very ground on which a covenant not to engage in a similar business is sometimes implied from a sale of the good will of a business, namely, that it is necessary to give to the purchaser what is sold to him.

In our opinion the decree, so far as the first, third, fifth and sixth paragraphs are concerned, was right.

From the facts found by the master there is no reason to apprehend that the defendant Marshall will take from the post office letters addressed to the Marshall Engine Company relating to the business sold by him to the plaintiff after he is enjoined from doing business. The defendant Marshall cannot do that without violating that injunction. The fourth paragraph therefore should be stricken from the decree. The plaintiff's rights are fully secured by the rest of the decree.

The seventh paragraph evidently was taken from the decree directed to be entered in *Old Corner Book Store* v. *Upham*, 194

Mass. 101, where the new corporation was not the defendant Upham in another form.   Where the new defendant corporation is enjoined, this provision is not necessary.

The master states in his report that he excluded evidence tending to show that Marshall was not the owner either of the patent named or of the good will set forth in the agreement of September 15, 1902.   The defendants have argued that in this the master was wrong.   No exception was taken to this and therefore the question is not before us.   As the point has been argued it may be added that the defendant Marshall is estopped to show that he did not own what he assigned.

The decree of the Superior Court must be modified by striking out the second, fourth and seventh paragraphs, and so modified it must be affirmed.

*So ordered.*