## No. 8683.

### D. BERGAMINI VS. B. M. BASTIAN.

The sale of a commercial establishment, together with the good-will thereof, does not preclude the vendor from the right of opening a similar establishment in the same vicinity within a short time after the sale, in the absence of an express understanding or stipulation, under which the vendor had obligated himself not to engage in or pursue a similar business within a limited space or for a specified time. Good-will is a proper subject of trade, bargain and sale; but in a sale of good-will, courts cannot imply the additional contract or obligation not to do business on the part of the vendor.

This doctrine finds its support in authorities under the Civil Law as well as under the Common Law.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Wilkinson & Armstrong* and *Armand Pilié* for Plaintiff and Appellee:

"The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by equity, custom or law, is considered as incidental to the particular contract, or necessary to carry it into effect." C. C. 1903, 1901, 1943, 1963, 1964, 1965, 2543.

Warranty respecting the buyer's peaceable possession of the good-will sold is of the nature of contract in the Civil Law of sale. And where the same is both implied and express, the vendor is obliged to maintain and keep the vendee in possession of the good-will as much as lies in his power, and *a fortiorari* must do no act to disturb him in said possession. C. C. 2475, 2476, 2503, 2504; Pothier on Sale, "Warranty," pp. 58 and 61; Trogel vs. Helmers, Civil District Court of Orleans, 1881; Journal du Palais, Répetoire Générale, verbo Achalandage, No. 8; "Dumont vs. Auger," Jurisprudence Générale du Royaume, par Dalloz et Tournemine, anné 1825, Deuxiéme Partie, Cour Royale, p. 92; Journal du Palais, Fond du Commerce, No. 15; 12 An. 541.

"Good-Will" is of value, and can be bought and sold. C. C. 2448, 2449; 3 An. p. 17; 9 An. 294; 21 An. 391.

"Such sales are very common contracts with us, and violate no law that we are aware of; the effect of such contracts on the public weal is too remote to be noticed." Wintz vs. Vogt, 3 An. p. 17.

Common law authorities are entirely inapplicable to the present cause, as the warranty respecting the buyer's peaceable possession of the thing sold is unknown and foreign to the common law. 3 An p. 17; Coke's Littleton, Par. 102; Smith on Mercantile Law, pp. 264, 165.

Eviction means the ousting or deprivation of a legal right, by the act either of a third person or the vendor; the latter is not even allowed to stipulate that he shall not be responsible for his own personal acts. C. C. 2504; Pothier on Sale, No. 86; 13 La. An. 236.

Where by the wilful acts of the vendor, through interest or bad faith, the vendee has been evicted or deprived of the totality or a part of the good-will purchased, the latter has a right not only to recover damages, *propter non rem ipsam habitam*, but also the loss of profits of which he has been deprived by the bad faith of the vendor. C. C. 2514; Demolombe, Vol. 24, No. 582 *et seq*; C. C. 2516, 1934; Pothier on Sale, pp. 58 to 61, and authorities before quoted.

The vendee has also the right to enjoin the further illegal interference by the vendor, with what is left of the good-will sold. And if plaintiff's claims for damages *propter non rem ipsam habitam* should be deemed inconsistent with his prayer for an injunction restraining defendant from further illegal interference, such an objection should have been pleaded by exception *in limine litis* in the lower court. 8 An. R. p. 48, and French authorities before quoted.

## *Aug. Bernau* for Defendant and Appellant:

1. A contract by which a person binds himself not to do business within certain limits and for a limited time is not in restraint of trade. 4 Daly 168 N. Y. Rep.; 53 Penn. St. 467; 59 Penn. 194; 78 Penn. 196; 9 An. 294; 3 An. 16.

2. Such contracts must be express and cannot be implied, and must be reasonable and impose no general restraint, otherwise they are void. 19 Pick. 51; 13 Allen, 370; 53 Penn. St. 467; 59 Penn. 194; 78 Penn. 196; 4 Daley 168 N. Y. Rep.; 6 Henn. 384, N. Y. Rep.; 3 S. C., 781 N. Y.

3. The sale of the "good-will" of a trade or business, in the absence of an express stipulation to the contrary, does not preclude the seller from setting up the same kind of business again in the same neighborhood, and he may generally advertise his new business and deal with former customers who voluntarily come to his new place, being simply restrained from resorting to deceptions and misrepresentations, calculated to implant in the patrons of his vendee the belief, that he is still carrying on the identical business sold to him. Smith's Merc. Law, 252; Ohio Rep. 1857, 1 D. 294, 296, 298; 5 Allen's Rep. 345; Story on Partn. § 100; 60 Penn. St. 458; 1 Pars. [Penn.] 478; 3 Brewst. [Penn.] 133; 2 W. N. C. [Penn.] 697; 1 Rose, 123; 17 Ves. 346.

4. In a suit against the vendor of the good-will of a business the general allegation: "that posters and handbills advertising and parading the same have been printed and circulated by him or his agents and other practices successfully resorted to in order to attract his former customers to his new establishment" [in the absence of a prohibitory clause,] displays no cause of action.

## *J. R. Beckwith* on the same side.

The opinion of the Court was delivered by

POCHÉ, J. This is an action for damages for the alleged violation of warranty by the vendor of an eating-house, together with the good-will thereof, and grows out of the following facts taken from the record:

On the 17th of June, 1881, the defendant, Bastian, sold by notarial act, for fifteen hundred dollars cash, to plaintiff, Bergamini, a "coffee and pastry establishment" situated at No. 21 Royal street, in this city, together with its contents and appurtenances, and "together with the good-will thereof;" and the purchaser, being placed in immediate possession, proceeded at once to carry on the business of the concern.

On the fifth of November following, the defendant, Bastian, opened at Nos. 18 and 20 Royal street a similar establishment, and announced it by handbills as the "Mammoth Coffee Saloon and Dining Rooms," and has carried on that business from that time on to the day of the trial below.

Now plaintiff, after stating these facts, charges that by opening his new establishment at the time and place mentioned, the defendant has violated his warranty under the sale, and has completely destroyed the good-will stipulated in the transfer.

He alleges that the establishment and its contents were worth only $500, and the good-will thereof being worth $1000 of the purchase price, he has therefore been virtually evicted through the acts in bad faith of defendant, who has in addition caused him damages in the sum of $500, for loss of profits, and he therefore prays for judgment against him in the sum of fifteen hundred dollars.

His petition was filed in December, 1881.

The defendant excepted:

1. That the notarial act of sale contains no stipulation that defendant shall not engage in business.

2. That good-will is incapable of sale or ownership.

These and two other exceptions, not now insisted upon, having been overruled, he filed a general denial, followed by an admission to have opened business at 18 and 20 Royal street, and urged other matters of defense.

We shall deal with the various defenses as amounting to a general denial, coupled with the admission above stated, and putting at issue all the material facts averred and the law relied upon by plaintiff.

This case was tried by a jury; and the defendant prosecutes this appeal from a verdict and judgment of five hundred dollars as damages. Plaintiff moves for an amendment of the judgment with a view to recover the full amount of his claim. The contention hinges upon the proper construction of the sale of June 17, 1881, and of the obligation of warranty on the part of the vendor, of the good-will of the establishment, as affected by his subsequent acts in opening a similar establishment in close proximity to that which he had sold to plaintiff.

Plaintiff contends that the legal obligation of the vendor to warrant the peaceable possession and enjoyment of the good-will necessarily

implies the obligation not to enter into a similar line of business at a short distance from the other, calculated to draw customers from the concern which he had sold, and to thus destroy the good-will sold and warranted.

This construction is resisted by the defendant who urges that the vendor, under such circumstances, will not be held to have thus contracted not to enter into a similar business, in the absence of an express stipulation to that effect, and that a contract in restraint of trade cannot be presumed and enforced by the courts.

The issue thus presented has not yet been the subject of inquiry in our jurisprudence, and it therefore presents a new question, of serious importance to commerce, to the solution of which we have bestowed unusual care, thought and study.

. The three cases quoted from our Reports do not involve the present issue, but the principles therein settled afford some assistance, in our present researches, and throw some light on the subject of this controversy.

They settle the principle that good-will can be the subject of a sale in commercial contracts, and that the clause in an act of sale by which the vendor binds himself not to pursue the same trade or business as that which he sells, within a specified limit and for a specified time, is not invalid as being in restraint of trade, and can be enforced by the courts.

Such was the issue presented, and such was the adjudication made in the cases of Wintz vs. Vogt, 3 An. 16, and Verges vs. Forshee et al., 9 An. 294. The decision in the case of the Succession of Jean Tourné, 21 An. 391, defined the meaning in law of the term "good-will," and re-affirmed the doctrine that it was a legal subject of trade, and bargain and sale.

The term has been defined by several authors, whose definitions, although varied in terms, all approximate to the same meaning. The following definition by Judge Story commends itself for its clearness and vast comprehension: "Good-will is the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stock, funds or other property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

By the French authorities, by whom it is known as "achalandage," it is held to be "la réunion fictive des practiques ou chalands qui

achètent habituellement chez un marchand ou dans une maison de commerce."

This definition, although more condensed or slightly more restricted, conveys the main idea which prevails in Judge Story's.

Proceeding now to define the good-will of the establishment which Bastian sold to Bergamini, we find from the record that the business which Bastian had been engaged in for about eighteen months or more, consisted of a saloon where refreshments, consisting of liquids and food, were sold at reduced prices, comparing with other lunch houses or restaurants, with a run of custom depending mainly on the proprietors and employees of adjoining gambling houses, and of other customers drawn to it by its central position and by the superior quality of the milk and of the pastry therein served at all hours, and with neatness and punctuality. The house bore no outward sign or trademark, and did not even contain the name of its owner on the outside. The only means used as an attractive sign was a blackboard containing in large letters a list of the dishes and other articles served daily and the prices thereof.

The evidence fails to show that the name of Bastian, the owner, or his peculiar style of running the house, or his renowned skill as a host of repute, contributed to the popularity of the establishment, or served to attract an exceptional run of customers.

We therefore understand that the good-will of the establishment, which was contemplated in the sale from Bastian, was the advantage or benefit, beyond the mere value of the lease of the premises, of the appurtenances and other movable property, such as furniture, crockery-ware, etc., which the establishment had acquired by the run of customers which had been in the habit of drinking and eating at that place, to which they had been drawn on account of its central position, or of its proximity to such customers' places of business or residence, and on account of the style and manner of the service, and of the quality and price of the refreshments therein dealt out.

As we have stated above, there is no dispute as to the delivery of all the things that were sold, but the complaint is that the vendor has violated the obligations of his warranty of the good-will—by opening in the vicinity, a short time after the sale, a similar business, to which he attracted the customers of the Bergamini establishment.

Plaintiff contends, and it cannot be disputed, that the vendor's obligation of warranty must be measured under the provisions of the civil and not of the common law, and hence, he argues that the vendor's obligation of warranty is violated by any act of his which tends to disturb his vendee in the peaceable possession of the property or thing sold by such vendor.

To that extent, we clearly assent to plaintiff's theory, which finds unqualified support in our law as well as in our jurisprudence. But when he goes further, and seeks to construe the act of a vendor of an establishment, together with the good-will thereof, in opening a short time after the sale and in the same vicinity a similar establishment, as an act tending to disturb his vendee in the peaceable possession of the " good-will " transferred by said vendor, who had not bound himself not to resume business in the manner complained of, we cannot follow him and we must pause, as Bastian's name did not figure as a sign to the house, as he used no distinguishing name or trade-mark for the business, and as his personal skill or reputation as a specialist was not the attraction of the custom ; we are safe in the conclusion, that none of these elements entered in the " good-will " contemplated by the parties in the transaction ; and that in the language of our predecessors in the case of Tourné, (21 An. 391) : " It is not exclusively to the person that what is termed the good-will is attached, but it is chiefly to the place."

Hence, we must hold that in opening a similar establishment at Nos. 18 and 20 Royal street, and in soliciting custom from the public and from his old patrons, by means of circulated handbills and by the usual modes of advertisement, he committed no act tending directly or necessarily to disturb the establishment situated at 21 Royal street, from its peaceable possession and enjoyment of the custom which had patronized that establishment previous to and since the 17th of June, 1881.

Plaintiff complains particularly of the appeal made by Bastian in his handbills, some of which had been distributed in the saloon at No. 21 Royal street, " to his old patrons," and he naturally concludes that this expression had a direct, if not an exclusive reference to the customers secured by Bastian at the time that he sold to plaintiff.

But the evidence shows that Bastian had been engaged in this line of business for upwards of twenty-five years, and that he had successively kept four or five similar establishments in this city ; and hence, he must have had many other " old patrons " besides those who had dealt at No. 21 Royal street.

Holding, as we do, that he was not in the least precluded by any stipulation in his contract with plaintiff from resuming the business of saloon and lunch house in any portion of this city, we must recognize his right to resort to ordinary means of advertising his business, and to other modes of soliciting patronage or custom ; and the evidence which we have read carefully and considered materially, fails to show that he directed his efforts to draw custom from Bergamini more than

from any other dealer in the same line of business. It is in evidence that since June, 1881, several similar establishments have been opened in the same block, one of which is immediately adjoining plaintiff's, and the conclusion that the shrinkage in plaintiff's business is to be attributed to natural chances of trade and to the consequences of increased competition, more than to any act of the defendant, is not only reasonable, but is supported by the evidence and by all the equities of the case.

In support of his theory, plaintiff invokes the particular construction of such contracts which he claims to have prevailed in civil law jurisprudence, and he firmly repudiates any and all common law authorities on the subject. A careful examination of the authorities under both systems has disclosed to our minds the fact, that on the point which we are now discussing there is no material difference between the decisions of the civil law and of the common law courts. The shade of difference between the two lines of authorities is on the question of the binding effect of contracts under which a party stipulates not to pursue a particular line of business, on which point the common law authorities have a tendency to discountenance such contracts as in restraint of trade, and as tending to foster dangerous monopolies, while the civil law authorities seem to tend towards the binding effect of all such contracts or stipulations. But on the proposition, which we maintain in this opinion, that the vendor of an establishment, with the good-will, does not preclude himself from resuming business in the same line, in the same place or vicinity, and a short time after the sale, in the absence of an express understanding or stipulation to that effect, we find ample support from decisions and respectable authorities under both systems. Crutwell vs. Lye, 17 Vesey R. High Court Chan.; Bassett et al. vs. Percival, 5 Allen, 345.

In our researches among French authorities, we find that the Court of Cassation, in the case of Boultier, on appeal from Angers, reported in "Journal du Palais" for 1870, p. 89, held: "He who sells an establishment with the good-will thereto attached, will not be held by the simple fact of the sale, and in the absence of a special agreement, to have renounced or abandoned the right to open and carry on a similar establishment." "Celui qui vend un fonds de commerce avec l'achalandage en dépendant n'est pas réputé par le fait seul de la vente et en l'absence de conventions spéciales, avoir renoncé au droit de fonder et d'exploiter un établissement semblable."

We have given due consideration to the two cases quoted from the same tribunal by plaintiff's counsel, and we do not think that they are applicable to the issue presented in this case.

The case of Auger vs. Dumont, decided in 1824, presented substantially the following facts :

In insolvency, the business of Auger, a chocolate manufacturer, had been sold to Dumont, who at once opened his business as " Dumont, successor of Auger," keeping the same sign and trade-mark on the front of the house as the furnisher of chocolate to the Courts of France, Austria and Russia, with the arms of each of those nations emblazoned on the sign. In addition, Auger engaged his services as an employee of Dumont, joining in a circular of Dumont, in which the customers of Auger were informed of the latter's new engagement. In the course of events he left Dumont, and proceeded to open a chocolate establishment of his own in the same vicinity, to which he attached the same trade-mark, advertisement and arms of the several countries, and he issued circulars denouncing that Dumont was not his successor.

The Court of Cassation held that such acts were an infringement of the good-will transferred to Dumont, but no such facts are disclosed by the record in this case.

The case of Coche vs. May, decided in 1836, turned upon the construction of the sale of a coffee-house, with the good-will, and with the avowed intention by the vendor of going into the business of brewery, and said vendor, within a short time thereafter, refitted and opened a similar establishment or coffee-house in the immediate vicinity.

The difference of the issue in these two cases and the present suit is too striking for further comment. Our conclusion is, therefore, that the verdict and judgment appealed from are erroneous.

Under these views, we find no necessity of passing upon the injunction prayed for by plaintiff for the purpose of restraining defendant in the pursuit of his new business, as well as upon other issues presented by the pleadings.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury be set aside and that the judgment of the lower court be annulled, avoided and reversed; and it is now ordered that plaintiff's demand be rejected and his suit dismissed at his costs in both Courts.

Rehearing refused.