97  537
131   14

GEORGE W. FINDLAY V. CARSON & WALKER, *et al.,*
Appellants.

**Contracts:** PRIVITY. A lease of a coal mine obligated the lessor not to lease to any other party any coal land to be operated during the life of the lease, and prevented the lessee from "dividing his time or attention with any other mine," for the reason that lessor's rent depended on the number of bushels mined. The lessee assigned his interest in the lease, and the assignees sought to restrain him from operating another mine, on the ground that he was still bound by the original lease. *Held,* that no right to insist on the obligation between lessor and lessee was transferred to the assignees, but that they acquired simply such rights as their assignor had under the lease, and were bound in his stead by its obligations.

CONSTRUED. An assignment of a lease of a coal mine, with the "good will of the trade," does not carry with it an obligation that the assignor will not again engage in the same business in the vicinity.

**Injunction:** EVIDENCE. To justify the granting of an injunction restraining the breach of an agreement by the assignor of a lease of a coal mine, not to operate any other mine in the vicinity; the agreement must be certain and distinct, or such as, from the surrounding circumstances, may be construed with certainty, and be clearly established by the evidence.

PRIMA FACIE CASE. In an action on an injunction bond, plaintiff makes out a *prima facie* case by establishing the dissolution of the temporary injunction, and the dismissal of the original suit, and the burden is on defendant, to show that the injunction was rightfully issued.

SAME—DAMAGES. Damages for having been wrongfully enjoined from mining another mine, on account of said contract provision, may include lost profits.

**Appeal.** The question of the effect of judicial proceedings in a former action, as an estoppel against appellant, cannot be raised by an appellee, who presented the question below, and took no appeal from rulings thereon, adverse to him.

*Appeal from Van Buren District Court.*—HON. W. I.
BABB, Judge.

THURSDAY, APRIL 9, 1896.

As originally commenced, this was an action at law, upon an injunction bond, made and executed in a certain suit, wherein defendants herein secured an injunction against the plaintiff, restraining him from selling coal in a particular locality, and to certain persons. The defendants filed an answer and a cross bill in equity, denying that the injunction was wrongfully sued out, and asking that they have in this action, a decree, permanently enjoining the plaintiff from selling coal in violation of a certain agreement, which they claim he made, not to sell the same in a particular locality. The cause was thereupon transferred to the equity calendar, and tried to the court. The district court rendered judgment against defendants, for the sum of three hundred and six dollars and five cents, and dismissed their cross bill, and the defendants appeal.—*Affirmed.*

*Wherry & Walker* for appellants.

*Sloan & Sloan* and *W. A. Work* for appellee.

DEEMER, J.—The pleadings in the case are very voluminous, and we will not do more than attempt to set out the substance of the issues. The action is to recover damages upon an injunction bond given by defendants in a suit brought by them against the present plaintiff, in January, 1890. That action was to restrain the plaintiff herein, from selling coal to any persons who were patrons of the mine owned by defendants in April, 1885, and from contracting or offering to contract with the Chicago, Rock Island & Pacific Railroad Company, to furnish it coal at Doud's Station for its use, and from selling any coal to the country trade in the vicinity of his mine. A temporary injunction was issued to that effect, and served upon the plaintiff, January 6, 1890; but this injunction

was subsequently dissolved, on motion of this plaintiff, by the judge who issued the same, and a short time thereafter defendants herein dismissed their case. It was claimed in that case, that in 1885, these defendants purchased of the present plaintiff, all of his interest in a certain coal mine held by him under a lease, and with the exclusive right to sell coal in the vicinity of the mine; and that this plaintiff had, in violation of his contract, started up a new mine, and was contracting and selling coal, to the great damage of these defendants. They afterwards amended their petition by alleging that, at the time of their purchase, the present plaintiff agreed not to enter the coal mining business in that vicinity, which was, as they alleged, a part of the consideration of the sale. All of these matters were denied by the plaintiff, and, as before stated, the injunction was dissolved, and the case dismissed. In the case at bar the defendants, in answer to plaintiff's cause of action on the bond, pleaded substantially the same matters they had alleged in their original petition as amended, in which they sought to obtain an injunction against the plaintiff, and say that they were then, and now are, entitled to an injunction, and they pray that the same do issue, and that they have damages from plaintiff for the violation of his agreement. The plaintiff denied the allegations of the defendants' cross bill, pleaded an estoppel and various other matters, which are not necessary to be stated. Such were, in substance, the issues on which the case was tried, which resulted in the judgment and order appealed from.

We are met at the threshold of the case with a proposition from appellee's counsel, that the dissolution of the temporary writ of injunction by the court, and the dismissal of the original injunction suit by these defendants, are conclusive upon the question of the wrongful issuance of the writ; that such facts

constitute such a judicial determination of the controversy, and such a breach of the conditions of the bond, as to entitle their client to the damages he is able to show he has sustained; and that the question as to the rightfulness of the injunction cannot be relitigated in this case. There are some authorities which may seem to sustain them in their position, and it may be that their contention is sound, but the record is not in such condition that we may determine the question. The appellee presented the point to the court below in various forms, and it ruled against him, and from these rulings no appeal has been taken. Consequently we cannot consider the question presented, but must try the cases on the issues as made before the lower court. It must be conceded, then, that, if the defendants have shown that they were entitled to the writ at the time it issued, this constitutes a defense to plaintiff's cause of action on the bond. It does not follow, however, that we cannot consider the dissolution of the injunction, and the dismissal of the suit, as probative facts in the case, although they cannot, in view of the record made, be held to be conclusive. It is manifest that these matters make out a *prima facie* case for the plaintiff, and cast upon the defendants the burden of showing that the injunction was rightfully issued. *Boden v. Dill,* 58 Ind. 273.

We turn, then, to the question, was the injunction rightfully issued in the first instance? The following are some of the undisputed facts: On and prior to April 1, 1882, one McGrew was the owner of a large tract of coal lands, lying in section 24, township 70, range 11, in Van Buren county, Iowa; and on the day named, he leased to one Hugh Findlay, a brother of the plaintiff, his coal mine, located on said section of land, for the term of five years from date. By the terms of the lease, Findlay was

"not to divide his time or attention with any other mine," nor was McGrew "to lease any other party any coal mine to be operated during the life of this lease." On October 10, 1882, Findlay sold to William Carson, a member of the defendant firm, a one-half interest in this lease, for the sum of five hundred dollars; and these persons, under the name of Carson & Findlay, proceeded to work and operate the mine until about January, 1885, when Hugh Findlay sold his half interest in the lease to the plaintiff in this suit; and he, in turn, in less than a month thereafter, sold his half interest to defendant Matthew Walker. An extension of this lease for an additional five years, or until April 1, 1892, was procured from McGrew, by some one, but by whom, is a matter of dispute. The defendants proceeded to operate the mine up to the time of the institution of this suit. In the year 1885, Hugh Findlay opened up another mine, upon the section of land that defendant's mine is on, and continued to operate it until the thirteenth day of April, 1888, when he sold the same to plaintiff, George Findlay, who continued to operate it until the injunction was served upon him, on January 6, 1890.

Claim is made by the defendants that, at the time they purchased plaintiff's interest in the McGrew lease, he (plaintiff) expressly agreed that he would discontinue the mining of coal at said place, and would not engage in the same. Defendants also claim that by reason of the stipulations contained in the McGrew lease, and by virtue of the assignment by plaintiff of an interest he had purchased therein to the defendants, he placed himself under obligations not to engage in the mining of coal upon the section of land where defendants' mine is situated.

We will first dispose of this last claim made by the defendants. It will be seen that the original McGrew lease obligated the lessor, McGrew, not to

lease to any other party any coal to be operated during the life of the lease, and prevented the lessee, Findlay, from "dividing his time or attention with any other mine." This last clause was made for the benefit of McGrew, for the manifest reason that he was to receive as rental one-half cent per bushel for all coal that should be mined. When plaintiff became one of the parties to the lease by virtue of his purchase from his brother, he, no doubt became bound to McGrew, under this clause, to give his entire time and attention to the mine. But his obligation did not extend to any other person, and he was entirely released from it when he sold his interest to Walker, for Walker then became bound instead of plaintiff. Plaintiff was under no contract with Walker or the defendants not to operate another mine, simply because he sold his interest to Walker. He simply transferred what rights he had under the lease, and no obligation between him and McGrew was transferred to Walker or the defendants, which would enable him or them to insist upon any rights that McGrew may have had under his lease with Hugh Findlay. Plaintiff did not need McGrew's consent to the assignment of the lease, and any agreement he may have made with McGrew based upon plaintiff's release, was a *nudum pactum*. There was no privity as to these matters between McGrew and defendants. McGrew's contract was not made for their benefit, but for his own; and the defendants, after they acquired the whole interest of the lease, became bound instead of the Findlays. These propositions are so plain that further argument is unnecessary.

With reference to the other claim made by the defendants, the evidence is much in conflict. Walker claims and testifies that, when he purchased of plaintiff his interest in the McGrew lease, the plaintiff made an agreement substantially as claimed, while

the plaintiff denies the making of any such agreement.

We have gone over the testimony in the light of the well-established rule that, before a court of equity will be justified in acting in such a case, the contract itself must be certain and distinct, or such as, from the surrounding circumstances, may be construed with certainty, and be clearly established by the evidence. High, Inj. (3d Ed.), section 1178. And while we are satisfied there was some talk at the time about plaintiff's wanting to quit and get out of business, and defendants may have thought that plaintiff would not re-engage in the business, yet such talk never ripened into a contract or agreement between them. The very strongest language which it is claimed plaintiff used, was "that he would not bother me [Walker] as long as I had the place, in the way of interfering with the bank and trade of the bank." It is very doubtful whether this, if true, would constitute an agreement not to re-engage in the business. The plaintiff, however, denies the use of any such language, and he is corroborated in such denial by some of the circumstances and other evidence in the case. We cannot set out all of the evidence on which we base our conclusions. It is sufficient to say that defendants have failed to establish the agreement as claimed.

Appellants argue that, as they purchased the good will and trade of the mine, a court of equity ought to protect them in it, by restraining plaintiff from re-engaging in the business. It is doubtful, to say the least, whether plaintiff sold more than his interest in the McGrew lease; but concede that he also conveyed the "good will of the trade," or that this followed as an incident to the assignment of the lease, yet it does not follow that such an agreement carries with it the obligation not to again engage in the business in that vicinity. Even under

such a contract, the seller is at liberty to engage in the same business in the same locality, and he has the right to solicit business, even though it may have the effect to lessen the trade of the purchaser. This seems to be the rule of the civil, as well as the common law. See *Hoxie v. Chaney*, 143 Mass. 592 (10 N. E. Rep. 713); *Bergamini v. Bastian*, 35 La. Ann. 60; *Bassett v. Percival*, 5 Allen, 345.

The only remaining question, is as to the amount of damages to which plaintiff is entitled. The lower court allowed him one hundred and four dollars and twenty cents, as attorney's fees, thirty-three dollars and twenty cents, for expenses, fifteen dollars for loss of time, one hundred and thirteen dollars and seventy-five cents, for loss of profits, and forty dollars for interruption to his business. Both parties complain of this allowance. The plaintiff, however, has not appealed, and we cannot consider his objections. As to defendants' complaints, we have examined them all, and find no error. Had the damages been larger, in some particulars, we would not have interfered. That this was a proper case for the allowance of profits as damages, see *Willis v. City of Perry*, 92 Iowa, 297 (60 N. W. Rep. 727), and cases cited. And, while many of the items cannot be determined with mathematical certainty, yet, on the whole, we feel that justice has been done. We reach the conclusion that the judgment is right, and it is AFFIRMED.