## TERESA E. BROWN *vs.* MARY C. BENZINGER.

*Good will*: sale of—; *trade or business; of a profession; vendor setting up in same business; injunction to restrain; principles applied; chiropody. Equity: demurrers to whole bill; complaint entitled to part of relief prayed.*

In the case of the sale of the good will of a trade, in order to warrant the issuance of an injunction to prevent the vendor from setting up in the same business, the contract must contain a direct covenant to that effect; but in the case of the sale of an established business and good will of a person engaged in a profession or calling whose income is the immediate result of his skill and other desirable qualities, which depend on the person and not on the place, this principal does not apply.        pp. 35-36

The fact that a small part of the consideration or purchase money may have been applied to the payment of personal assets can not, in the latter class of cases at least, have the effect of permitting a vendor to compete with the vendee within the limits of the territory over which the vendor's practice had extended.        p. 39

Chiropody is a calling having those features and characteristics which distinguish the sale of an established practice and good will of one engaged in a profession, from the sale of the good will of a trade or business of a commercial character.        p. 40

T. E. B. sold to M. C. B. for the sum of $500 her business,
good will and·personal effects as a chiropodist at a certain
place· in Baltimore City; subsequently the vendor set up
again under her own name in Baltimore; the vendee filed a
bill against the vendor alleging among other things that the
vendor had opened an office in Baltimore City under her own
name as chiropodist, and had solicited the patronage of the
complainant's customers; and had sought or was about to
seek to have cancelled a telephone contract which would
greatly injure the complainant's business; and prayed that
the defendant be restrained from engaging in such business
under her own name or under any other similar name, in
the City of Baltimore, and that she be enjoined from impair-
ing the good will of the business of the complainant and
from soliciting or alluring away her customers, etc., and from
interfering with the use of the telephone, etc.   *It was held,*
that a demurrer to the whole bill was properly overruled.

p. 41

While the bill did not allege that the vendor's practice extended
over the whole of Baltimore City, yet on the strength of the
other allegations in the bill the demurrer was properly over-
ruled.                                               p. 41

A demurrer to a whole bill will not prevail if the complainant
·is entitled to any part of the relief prayed for.       p. 41

The good will of a business comprises those advantages which
may inure to the purchaser from holding himself out to the
public as succeeding to an enterprise which has been con-
ducted in the past, with the name and repute of his prede-
cessor.                                               p. 35

*Decided March 27th, 1912.*

Appeal from the Circuit Court of Baltimore City (HAR-
LAN, C. J.).   The facts are stated in the opinion of the
Court.

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-
BRIDGE, JJ.

*Stephen W. Leitch* and *Edward L. Ward,* for the appellant.

*Julius H. Wyman* (with a brief by *John L. V. Murphy*), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case Teresa E. Brown, the appellant, on the fifth day of April, 1911, executed with the appellee, Mary C. Benzinger, a written agreement or contract by which she sold, transferred and assigned unto the said Mary C. Benzinger, at and for the sum of five hundred dollars, the receipt of which is acknowledged in the agreement, the business conducted by her as surgeon chiropodist at 217 North Liberty Street, in the City of Baltimore, *"including the good will of the said business",* and the personal effects therein named, consisting of office furniture, surgical instruments, etc. By the agreement it was understood that the vendor was to pay all the expenses, including charges for telephone, rent and light, to May 1st, 1911, and was to have the receipts of said business until said time, and the unexpired lease for the premises was to be assigned and transferred to the vendee. The vendee was to assume full charge of said business on May 1st, 1911, and from and after which time she was to have the receipts from said business and was to treat all former customers of the said vendor who had paid in advance for the time or period for which they had so paid, and the vendor was to teach the vendee and her daughter the business without charge, and after the first day of May, 1911, was to render services to the vendee without charge for an indefinite period.

On August 7th, 1911, the appellee filed her bill against the appellant in which the written contract referred to was made a part thereof and filed therewith as an exhibit. In her bill she alleged that the defendant for many years prior to April 5th, 1911, was engaged, in Baltimore City, in the business of treating ailments of the hands and feet under the

name and style of "Dr. Teresa E. Brown, Surgeon Chiropodist", and had acquired and secured a large number of patients, whose custom constituted practically the whole value of said business; that the surgical instruments and remedies required in the business were inexpensive and easily obtainable.

That "in order to induce said complainant to purchase said business (the appellant) declared that the value of said business was in the good will thereof, the customers having become familiar with said name. That she, the said defendant, intended to sell said good will and leave the City of Baltimore and quit the said profession or business; and your complainant, believing such representation, was induced to pay the sum of five hundred dollars ($500.00) unto the said defendant and to assume payment of the rent and other expenses incident to said business."

That on or about May 1st, 1911, the defendant moved from Baltimore City and the plaintiff assumed full charge of said business and has since conducted the same, paid all charges and expenses, and has complied with all the conditions and stipulations provided for in said agreement. That in the month of July, however, the defendant returned to Baltimore City, called upon the plaintiff and declared her intention of re-engaging in said business, saying that she was without tangible assets and a judgment at law against her, if secured by the plaintiff, would be worthless, and that said business intended to be established by her would ostensibly be owned and conducted by a corporation in which said defendant would appear to have no interest except that of servant and manager. And the bill alleges that such threatened corporation is intended to conceal the real ownership of said business, and that any such interference with "the good will of your complainant's business by said defendant, whether directly or indirectly, would be contrary to the terms and spirit of said agreement and would constitute a fraud upon the rights of your complainant."

That pursuant to the declaration that she would re-engage in said business, as above stated, the defendant has opened an office in Baltimore City and has exhibited a sign therefrom upon which appears "Dr. Teresa E. Brown, Surgeon Chiropodist," "and has solicited or caused to be solicited the patronage of certain of your complainant's customers, and has otherwise sought to deprive your complainant of the benefits and advantages of said agreement of sale to which your complainant is in fair and honest dealing entitled."

The bill further alleges that a large part of said business depends upon appointments made by telephone. That the contract for the same was made by the defendant with the telephone company, and that the plaintiff has, since the purchase of the business from the defendant and the transfer and assignment of the assets thereof, regularly paid the rental for said telephone, but the "defendant, since her return, has demanded, or intends to demand, of the company to disconnect said telephone and cancel said contract, which would result in great injury to your complainant's said business." That unless the defendant be restrained from engaging in said business, the value of said agreement will be destroyed and the benefit of the defendant's promise lost to the complainant, whereby she will suffer irreparable injury.

Upon these allegations the bill prays that the "defendant be restrained from directly or indirectly engaging in the business of treating ailments of the hands and feet under the name and style of "Dr. Teresa E. Brown, Surgeon Chiropodist," or other similar name, in the City of Baltimore, and that said Teresa E. Brown and her agents and servants be enjoined and restrained from impairing the good will of the business of your complainant, and from soliciting or alluring customers from said business; and that said Teresa E. Brown be enjoined and restrained from interfering with the use of the telephone in your complainant's place of business or with the contract for the rental thereof."

The Circuit Court of Baltimore City, on August 7th, 1911, upon the bill, affidavit and exhibit, ordered that "an

injunction be issued as prayed in the bill, unless cause to the contrary be shown on or before August 22nd, 1911," etc. On August 17th the defendant demurred to the bill, and on October 30th following the Court overruled the demurrer and granted leave to the defendant to answer the bill. It is from this last order, overruling the demurrer, that this appeal is taken.

The contention is made by the appellant that because there was no covenant or agreement in the written contract not to re-engage in business, no such covenant or agreement can be supplied by inference or implication upon the sale of the good will of the business.

The contract in this case, by which the defendant sold and transferred her business or practice as surgeon chiropodist to the plaintiff, contained no covenant by which the defendant, Dr. Teresa E. Brown, was not again to engage in said business or calling in the City of Baltimore. In this contract, however, the defendant not only conveyed certain tangible assets belonging to her and used in her business or profession, consisting, as it is said, of office furniture, surgical instruments, etc., of little value as alleged in the bill, but also her good will in the business or profession which she had successfully conducted for a number of years prior to such sale. The amount of the consideration paid by her was largely in excess of the value of such tangible assets and personal effects sold by the defendant to the plaintiff. The greater part of the amount paid to the vendor was for the good will of her business or practice.

It is necessary for us to determine what rights passed to the vendee under the transfer to her of the good will of such business or profession, and whether or not the defendant was thereby prevented from thereafter engaging in said business or the practice of her profession in the City of Baltimore.

The good will of a business or profession has often been defined both by English and American authorities. Of all such definitions the narrowest is probably that of LORD

ELDON, who, in 1810, defined good will as "the probability that the old customers will resort to the old place;" but by others and more recent authorities a much broader definition has been given, stating it to be: "The advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, *or from celebrity or reputation for skill, or affluence or punctuality,* or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." *Words & Phrases* 3128; *Haverly* v. *Elliott,* 39 Neb. 201; *Munsey* v. *Butterfield,* 133 Mass. 492; *Howard* v. *Taylor,* 90 Ala. 241, and others. Or, as defined in *Knoedler* v. *Boussod* (U. S.), 47 Fed. 465, 466: "The good will of a business comprises those advantages which may inure to the purchaser from holding himself out to the public as succeeding to an enterprise which has been conducted in the past, with the name and repute of his predecessor."

Our attention has been called by the counsel for the appellant to many authorities in support of his contention. 2 *High on Injunctions,* sec. 1169, etc.; *Churton* v. *Douglas,* Johns. (Eng.) 174; *Porter* v. *Gorman,* 65 Ga. 11; *Findlay* v. *Carson,* 97 Iowa, 537; *Bergamini* v *Bastain,* 35 La. Ann. 60; *Bassett* v. *Percival,* 5 Allen, (Mass.) 345; and *Cottrell* v. *Babcock,* 54 Conn. 122; the substance of all of which is summed up in one of them, viz, *High on Injunctions,* sec. 1169. It is there said: "Some conflict of authorities exists upon the question, whether in the absence of any express agreement against resuming business in a given locality upon the sale of a business with its good will, equity should interfere by an injunction to prevent the defendant from so resuming. The better doctrine, however, is that to warrant a Court of equity interfering by injunction in such cases there must be an actual contract, and the Court will not imply a covenant on the part of one who sells the good

will of a trade or business not to carry on the same trade or business in that locality. It follows, therefore, that where one has sold the good will of his trade without any express covenant preventing him from resuming his trade in that vicinity, he will not be enjoined from resuming it." ·

In some jurisdictions, however, a distinction is made, in the application of the law, between the sale of the good will of a trade or business of a commercial character where the location is an important feature of the business, and the sale of an established practice and good will of a person engaged in a profession or calling where the income therefrom is the immediate or direct result of his labor and skill and where integrity, skill, ability and other desirable personal qualities follow the person and not the place. In the first of these sales the principle above laid down applies, while in the latter it does not. *Bagby & Rivers Co.* v. *Rivers,* 87 Md. 401.

This distinction is made in the case of *Foss* v. *Roby,* 195 Mass. 292 (10 L. R. A., N. S. 1200). In that case the plaintiff and defendant were partners engaged in the practice of dentistry at 132 Court street, in the City of Boston. Upon the dissolution of the firm the defendant sold to the plaintiff his interest in the office furniture and dental equipment with the good will of the business. After a lapse of about three years the defendant opened an office at 88 Boylston street, where he practiced his profession and where he, by solicition, obtained many of the patients of the old firm and his business substantially consisted of this patronage. The Court in that case said: "The important questions for decision are, whether the defendant is precluded by his agreement from setting up a competing business, and the measure of relief to which the plaintiffs are entitled. By the contract of sale, while the defendant explicitly conveyed his interest in the good will, he did not expressly covenant to refrain from competition, either as to time or territory, but the sale being of an established practice, described in the instrument as. "the dental business then carried on at

Court street in said Boston," it was implied, even if not expressed, that thereafter the defendant would so practice his profession as not to injure and perhaps destroy the business he had sold. *Dwight* v. *Hamilton,* 113 Mass. 175; *Munsey* v. *Butterfield,* 133 Mass. 492. In a mercantile partnership the sale of the good will conveys an interest in a commercial business, the trade of which may be largely, if not wholly, dependent upon locality, and the right which the vendee acquires under such a purchase is the chance of being able to retain the trade connected with the business where it has been conducted. But in a partnership for the practice of dentistry the personal qualities of integrity, professional skill and ability attach to and follow the person, not the place. The object to be obtained was the protection of the vendee, and the agreement is to be construed as if the defendant had expressly covenanted to render the old practice secure by not competing himself under conditions by which it might either be impaired or destroyed. If this were permitted, then while retaining the consideration, the defendant might also deprive the plaintiffs of the benefits of their purchase by regaining the customers." *Beatty* v. *Coble,* 142 Ind. 329.

In the case of *Yeakley* v. *Gaston,* 111 S. W. R. 768, the Court there said: "The authorities cited by the appellant seem to us to be sound in holding that the sale of the good will of a professional man carries with it the obligation that he will abstain from practice in the future in the territory from which he thus binds himself to withdraw."

And in the case of *Dwight* v. *Hamilton,* 113 Mass. 177, the Court said: "The sale of the practice and good will of a physician within certain limits is the legitimate subject-matter of a contract and carries with it the implied covenant, as in other sales, that the vendor will not himself do anything to disturb or injure the vendee in the enjoyment of that which he has purchased.

"This case resembles *Angier* v. *Webber,* 14 Allen, 211, where the interest and good will of a teamster's business

between Boston and Somerville were sold. There was no express covenant that the defendant would not enter into the same business on the same route, and the Court held that establishing a similar business on the same route was the breach of the agreement, and the injunction was granted."

In further discussing the facts of the case of *Dwight* v. *Hamilton, supra,* the Court said: "Here the defendant within three months of the sale returned to Douglass, opened an office in the next house, but one from his former office, and recommenced the practice, which with the good will, he had sold to the plaintiff. For such breach the plaintiff may have an action at law, or a more complete remedy in equity by injunction and so compel the defendant to the performance of his agreement."

In the case of *Townsend* v. *Hurst,* 37 Miss. 679, the property, consisting of residence and office, was expressly sold as *a stand for a physician,* with the statement that the defendant intended to remove to Florida, and with the promise to recommend the appellant to his patrons. The Court in that case said: "The conduct of the defendant in returning and resuming his practice among his old patrons was such a violation of good faith and such a fraud on the appellant as entitles him to the relief he seeks."

In the case of *Warfield* v. *Booth,* 33 Md. 63, a suit at law was instituted to recover damages for the breach of a written contract executed by the plaintiff and the defendant, whereby Warfield, a physician of the town of Lisbon, Howard county, sold to Booth, another pyhsician, his good will of practice for the sum of one thousand dollars, of which he paid in cash three hundred dollars and to secure the payment of the balance gave his notes for one and two years. By the contract Warfield was to quit his practice on the first day of May, 1867, in favor of Booth. This he did, but before the institution of the suit returned to Lisbon and resumed the practice of his profession. The Court in construing the meaning and effect of this contract, said: "Warfield sells his good will of practice and agrees to quit the practice in favor

of Booth, that is, to relinquish to Booth the practice which
he had, and not *to compete with him within the limits or
range of country over which his practice had extended."* There
was no covenant in the contract that he should not return
and resume his practice, but nevertheless the Court said he
was not to compete with him within the territory mentioned,
and in this restriction there was no limit as to time; and
thus he was not to return and resume his practice within
such territory.

It is true, in that case no personal effects or tangible assets
were sold with the practice and good will of the vendor, the
amount so paid was for the practice and good will alone;
while in this case a small part of the money was paid for
personal assets included within the contract, the greater part
thereof being for the practice and good will. But we cannot
conceive how the existence of the fact that a small part only
of the purchase money was applied to the payment of per-
sonal assets can have the effect of permitting the vendor
Brown to compete with the vendee within the limits of
the territory over which the vendor's practice had extended,
when in the former case, without the existence of this fact,
the vendor was not permitted to do so. To permit the vendor
in either case to compete with the vendee within said terri-
tory would be in derogation of his or her grant.

In the former case the vendor was to quit his practice at
a certain day named in the agreement, with no covenant
that he would not resume it, and as we have said, the Court
there construed the language to mean that the vendor would
relinquish his practice to the vendee and would not com-
pete with him within the limits or range of country over
which his practice extended.

In this case the vendee was to take full charge of the
business on May 1st, 1911, at which time, of course, the
vendor was to relinquish the same and quit the practice of
her profession or calling. The fact that she was to quit her
business and cease to conduct it on May 1st, 1911, is shown
by the provision contained in the contract that after such

time the vendee was to treat her customers who had paid
in advance for the period for which they had so paid, extend-
ing beyond May 1st, 1911.   Moreover, she was to render
services thereafter to the vendee.

The facts of this case do not materially differ from the
facts of the former case.   We, therefore, think the vendor
should be held to the same restrictions and not be per-
mitted to compete with the vendee within the limits of the
territory over which her practice had extended.   If she were
to withhold and retain the consideration for which she had
disposed of her practice and good will to the vendee, and at
the same time resume her practice and compete therein with
such vendee, it would not only be in derogation of her grant,
but it would be a fraud upon the vendee.

It is contended, however, by the appellant that should we
be disposed to follow the line of decisions distinguishing in
cases of the sale of the good will of professions from those
in the sale of the good will of commercial enterprises, we
could not do so in this case because the business of a chirop-
odist cannot be regarded as a profession.   For the purpose of
this decision it is not necessary for us to determine whether
chiropody is a profession.   If it be not a profession, it is,
as practiced by the appellant in this case, a calling having
those features and characteristics which, in the application
of the law, distinguish the sale of practice and good will of
one engaged in a profession from the sale of the good will
of a trade or business of a commercial character, as hereto-
fore explained.   The reason assigned in the authorities cited
why the principle of law therein laid down should not apply
to the sale of good will of a profession, applies with equal
force to the sale of the practice and good will of the appel-
lant in this case, whether her calling be considered a pro-
fession or not.

The Court below in the prayer of the bill is asked to
restrain the defendant from directly or indirectly engaging
in the business, etc., in the City of Baltimore.   In the bill
it is not alleged that her practice extended over the City of

Baltimore; it may or may not have been so extensive. The restrictions to be imposed upon the vendor should extend only to the limits of the territory or locality over which her practice had extended. In any event, however, the demurrer to the bill was properly overruled, for the bill alleges that she has solicited or caused to be solicited the patronage of certain of the plaintiff's customers, and had also attempted to deprive her of the telephone, to which she was entitled, by a cancellation of the contract with the company therefor, and asks that the defendant, her agents and servants, be enjoined and restrained from impairing the good will of the business of the complainant and from soliciting or alluring customers from said business, and from interfering with the use of the telephone in the plaintiff's place of business or with the contract for the rental thereof.

The law is well established that even though she were permitted to resume her business, she would not be permitted to destroy the value of the good will sold to the vendee by alluring and dissuading, either in person or by her servants and agents, her former customers from dealing with the purchaser of the good will, and soliciting them to trade with her, or by attempting to deprive her of the telephone, the number of which was well known to the customers, and as the bill alleges, a large part of the business depended upon appointments made through it. *Notes to Foss* v. *Roby,* vol. 11, 1 *A. & E. Annotated Cases,* 575; *Labouchere* v. *Dawson,* L. R. 13, Eq. 322, 25 L. T. N. S. 894, 20 W. R. 309, 41 L. J. Ch. 427. And in her attempt or efforts so make to destroy the value of the good will so sold by her to the vendee, she should have been enjoined.

The demurrer in this case is a general demurrer to the whole bill and as the plaintiff is entitled, as we have said, to at least a part of the relief for which she has prayed, even though she may not be entitled to the whole relief, the demurrer was properly overruled.

*Miller's Equity Procedure,* 173; *Miller* v. *Baltimore Co. Marble Co.* 52 Md. 646, and authorities there cited.

It follows. that the order will be affirmed and cause remanded. The lower Court can grant leave to the defendant to file an answer within such time as it may fix.

> *Order affirmed and cause remanded for further proceedings—the appellant to pay the costs in this Court and the costs below to abide the final result.*