158 So.2d 660

William JOSEPH et ux.

v.

Thomas D. HOPKINS.

3 Div. 10.

Supreme Court of Alabama.

July 18, 1963.

Rehearing Denied Dec. 12, 1963.

Euel A. Screws, Jr., and Godbold, Hobbs & Copeland, Montgomery, for appellants.

Ball & Ball and John R. Matthews, Jr., Montgomery, for appellee.

**20**

HARWOOD, Justice.

The complainants below, Dr. and Mrs. William Joseph, filed a bill seeking to enjoin Dr. Thomas D. Hopkins from competing with Dr. Joseph in the practice of optometry in the City of Montgomery. The complainant's claim that Dr. Hopkins' action in reopening an optometry office in the City of Montgomery was a breach of certain provisions in the contract by which Dr. Hopkins had sold his optometry business to the Josephs. This contract was entered into on 12 November 1955.

The appellants also sought damages allegedly resulting from the competition.

The appellee, Dr. Hopkins, demurred to the bill, and upon the demurrer being overruled filed his answer denying that the reopening of an optometry office by him constituted a breach of the contract.

Dr. Hopkins also filed a cross bill seeking to enjoin Dr. Joseph from operating his optical dispensary under the name "Hopkins Optical," and requested damages caused by the use of the name, and further prayed for an order for the production of Dr. Joseph's records showing assets on which Dr. Hopkins held a mortgage. In his cross bill Dr. Hopkins further claimed that the note and mortgage given by Dr. Joseph for the purchase of Dr. Hopkins' practice was in default, and he requested acceleration of the payments of the notes. Further, Dr. Hopkins sought a judgment for attorney's fees expended in his legal proceedings to accelerate the due dates of the notes.

After hearing testimony, the Circuit Court of Montgomery County denied relief to the Josephs under their bill, and further denied relief to Hopkins under his cross bill.

Both parties have appealed from the decree alleging error on the part of the lower court in those portions of the decree adverse to their respective interests.

The appellants, Dr. and Mrs. Joseph, have also assigned as error several rulings of the court below refusing to admit certain evidence offered by them.

The evidence presented below tended to show that Dr. Hopkins had practiced optometry in Montgomery for approximately twenty-eight years prior to 1955. For many years his office had been in the Exchange Hotel building. Dr. Joseph has practiced optometry in Montgomery since 1945.

In October or November 1955, Dr. Hopkins, whose health was then bad, contacted Dr. Joseph in reference to selling his business and practice. Dr. Hopkins testified that he merely told Dr. Joseph that he desired "to get out and see if he could regain his health," and that he made no promise that his retirement would be permanent. On the other hand, Dr. Joseph insists that

the fact of Dr. Hopkins' retirement was inducement motivating the purchase of Hopkins' business and practice, and without this inducement he would not have been interested in buying.

The parties had a luncheon conference and thereafter with the assistance of a mutual friend, Charles Green, a representative of the American Optical Company, and familiar with the value of optical equipment, they inventoried the physical assets of Dr. Hopkins' office.

A "cost" value and a "list" value was set down for each item inventoried, the "cost" value representing the original cost to Dr. Hopkins, and the "list" value representing the present valuation. The final totals agreed upon were $35,416 as the "cost" value, and $26,080.34 as the "list" value. Upon the completion of the inventory, Dr. Hopkins offered to sell his business and practice for $25,000 and Dr. Joseph accepted the offer and the following agreement was written by Dr. Joseph in the book in which the inventory had been tabulated:

"I, William Joseph and Thomas D. Hopkins, do hereby jointly agree to the following contract:

"That Thomas D. Hopkins does sell and convey to William Joseph all ophthalmic equipment, laboratory equipment etc., and entire stock of lenses, frames, etc., as now found in his offices at 104 Montgomery St. having a cost listing of $35,416.00 for the price of $25,000.00 payable $1000.00 cash herewith and $4000.00 in 90 days or sooner if possible, covered by a note of this amount without interest. The balance of $20,000.00 payable $100.-00/month beginning 1 Feb. 1956. The first 36 notes shall bear no interest, but all other notes shall bear interest at 5% as of Nov. 12, 1955. The maker reserves the right to pay-off these interest bearing notes at the rate of $1000.00 in any one calendar year. All the above tangible property covered by mortgage.

"Witness this 10th day of November 1955:

"s/ William Joseph
"s/ Thos. D. Hopkins"

A formal contract was later prepared which contained the following provisions material to this appeal:

"1. The seller does hereby grant, bargain, sell, convey and deliver to the purchasers all good will, equipment, furniture, fixtures, existing stock of goods, and all other assets, tangible or intangible, attaching to or used in connection with seller's business operated under the name of Dr. Thomas D. Hopkins, Optometrist, Exchange Hotel, Montgomery, Alabama, excepting therefrom the accounts receivable and any other indebtedness owing to the seller as a result of his operation of said business, and the seller warrants that he has a good and merchantable title to said assets free of all liens, claims and encumbrances.

"2. In consideration of said sale and conveyance, the purchasers agree to pay the seller, his heirs, representatives or assigns, the sum of $20,000.00, the principal of which shall be paid in 200 monthly installments with interest thereon at 5% per annum as evidenced by our promissory note and chattel mortgage of even date * * *."

Mrs. Joseph signed this contract with her husband and is in this respect only a party to this action.

For approximately a year after the sale in November 1955, Dr. Hopkins worked part time for Dr. Joseph and drew a salary for his services. During this period he introduced Dr. Joseph to many of his former patients and held Dr. Joseph out as his successor in practice. From the Fall of 1956 until the early summer of 1957, Dr. Hopkins commuted three or four days a week to Tuskegee where he handled the optometry practice of a Tuskegee optometrist who was absent in military service. Dr. Hopkins also was in charge of Dr. Jo-

seph's office while Dr. Joseph was on a vacation in the summer of 1957.

In the Fall of 1957, Dr. Hopkins informed Dr. Joseph that he desired to get back into full time practice. Dr. Joseph told him that under their agreement Dr. Hopkins could not enter into competition against him.

However, in October of 1957, Dr. Hopkins and Dr. Joseph entered into an oral agreement whereby Dr. Joseph opened a second office in the Normandale Shopping Center. This new office was financed by Dr. Hopkins at the cose of approximately $4,300 and was operated by Dr. Hopkins while the original office in the Exchange Hotel continued to be operated by Dr. Joseph. Under this arrangement Dr. Hopkins received one-third of the gross receipts of the Normandale office and Dr. Joseph the remaining two-thirds out of which he paid all of the expenses of the Normandale office. This arrangement lasted three years during which time, as was agreed, Dr. Joseph reimbursed Dr. Hopkins for his capital outlay.

In October 1960, this agreement was terminated and Dr. Joseph thereafter took charge of the Normandale office himself. He continued, however, to maintain the original office in the Exchange Hotel, and in the Fall of 1961, he installed at that location an optical dispensary business under the name of "Hopkins Optical."

On 3 January 1961, Dr. Hopkins established an office for the practice of optometry at a location approximately five blocks from the Exchange Hotel. This office was operated under the name of "Thomas D. Hopkins, Optometrist."

The Josephs have met all payments due to Dr. Hopkins under the sales contract.

■ Appellant argues that the lower court erred in refusing to admit evidence tending to show (a) that Dr. Hopkins told Dr. Joseph he intended to retire and leave his entire practice to Joseph; and that he did not intend to practice optometry again; (b) that the major assets of Dr. Hopkins' business were his reputation, and that the equipment sold with the business was outdated and of little value; (c) that the cost of setting up an office for the practice of optometry was between $5,000 and $10,000; (d) Dr. Joseph's income from 1955 to 1961, and the decrease of such income after Dr. Hopkins reopened his office; (e) that many of Dr. Hopkins' patients, if not all, after the reopening of his office, were former patients of Hopkins, or of Hopkins and Joseph during the time Hopkins worked in Joseph's office; (f) that the office in the Exchange Hotel has been rendered valueless by Hopkins' competition, and Joseph has been unable to sublease the same.

Appellant contends that all of the above proffered evidence should have been admitted to show the consideration, or lack of consideration for the contract, or to show the inducements which were the basis of the contract, or to show damages flowing from the breach of the contract.

■ The consideration for the contract between Dr. Hopkins and Dr. Joseph was clearly expressed in that instrument. The general rule of contract law is that when the parties reduce their agreements and obligations to writing, the writing in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties; and a court cannot, under the guise of construction provide a new and different contract for the parties. Darling Shop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 52 So.2d 211; Percoff v. Solomon, 259 Ala. 482, 67 So. 2d 31.

■ While general statements may be found in our decisions to the effect that the consideration for a written instrument is open to inquiry, and the true consideration shown by parol for the purpose of showing its validity or its failure, (Hamaker v. Coons, 117 Ala. 603, 23 So. 655; Ramsey v. Young, 69 Ala. 157; State Savings & Loan Co. v. Strong, 226 Ala.

453, 147 So. 436; Jackson v. Sample, 234 Ala. 75, 173 So. 510), such broad enunciations are limited by other statements that parol evidence may not be admitted to alter the character of the consideration. Moore v. Williamson, 213 Ala. 274, 104 So. 645, 42 A.L.R. 981, nor is parol evidence admissible where its effect is to change, or defeat, the legal operation of a written instrument which is clear on its face. Smith v. Wilder, 270 Ala. 637, 120 So.2d 871.

A clear exposition of the principles now being considered are stated in Leftkovitz v. First National Bank, 152 Ala. 521, 44 So. 613, as follows:

"[The third plea] shows upon its face, that it is an attempt to violate the rule that all agreements occurring at the time of or prior to the execution of a contract, are merged in the written instrument.

" * * * While there are authorities which state the broad proposition that the consideration of an instrument can always be inquired into by parol evidence, * * * *such cases we apprehend are those where the instrument constitutes a mere acknowledgment of receipt of a consideration and nothing more.* Such expressions are proper as applied to the facts of such cases. However, we hold it to be the true rule upon the subject, that where a consideration expressed in a contract is something more than a mere acknowledgment of receipt, and is of a contractual nature, and such consideration is made of the essence of the contract, in such event parol evidence is no more competent to vary the terms of the consideration as thus promised or undertaken than it can be received to vary any other term of the contract." (Emphasis ours.)

The evidence sought to be introduced was properly excluded in that if admitted it would change either the character of the consideration, or would result in an alteration of the legal operation and effect of the contract by adding thereto an implied covenant not to compete.

We now consider appellant's contentions that the sale of a profession with its good will carries with the transaction an implied covenant that the professional vendor will not compete with his professional vendee by again entering into the practice of his profession in the area in which he formerly practiced.

In Collas v. Brown, 211 Ala. 443, 100 So. 769, it was held that the sale of a mercantile establishment and the good will of the business (a restaurant) does not create an implied covenant not to compete.

Counsel for appellant argue, however, that a distinction is made by courts of other states between the sale of a mercantile business and that of a professional business or practice where such sale includes good will. In the latter instance a sale of the good will creates an implied covenant not to compete. Counsel has cited us to authorities from several of our sister states which support his contentions, particularly Brown v. Benzinger, 118 Md. 29, 84 A. 79.

This point has never been before the courts of this state, and regardless of whatever persuasive force the authorities cited by counsel for appellant may have, it is our opinion that Sections 22 and 23, Title 9, Code of Alabama 1940, necessitate a conclusion that no implied covenant not to compete arises from a sale of a professional business and its good will.

Section 22, supra, provides:

"Every contract by which any one is restrained from exercising *a lawful profession*, trade, or business of any kind, otherwise than is provided by the next two sections, is to that extent, void." (Emphasis ours.)

Section 23, supra, is as follows:

"One who sells the good will of a business may agree with the buyer,

and one who is employed as an agent, servant, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him, and so long as such employer carries on a like business therein."

Thus even a specific covenant not to compete in a profession, trade, or business is void except within the limitations imposed by Section 23, supra. Yost v. Patrick, 245 Ala. 275, 17 So.2d 240. Clearly the mandates of these statutes prevent the inference of an implied covenant not to compete merely from the sale of a business or profession and the good will thereof.

Other points are argued. They are, however, peripheral to the points above discussed, which we think are decisive of the issues raised. We therefore pretermit a discussion of them.

### Cross Appeal

The cross appellant, Hopkins, has argued two assignments of error.

■ The first assignment asserts error on the part of the lower court in not awarding damages for the cost of attorney's fees in defending the proceedings.

It is Hopkins' contention that because Dr. Joseph, in his bill, alleged that the action taken by Hopkins in practicing optometry in competition with Joseph, constituted a failure of consideration such as to relieve Joseph of further performance, was a declaration by Joseph that Hopkins was not entitled to collect any balance due on the notes.

The evidence shows however, that regardless of this conclusionary allegation in the bill, Joseph has in fact paid every note on or before its due date down to the date of the hearing.

■ Stipulations in notes and mortgages to pay attorney's fees for collection mean the attorney's fee reasonably incurred because of a default by the debtor.. Hamilton v. Burgess, 233 Ala. 4, 170 So.. 348.

There having been no default on any notes as of the time of the hearing below, Hopkins was not entitled to any attorney's. fee for the collection of the same.

■ The other assignment argued by the· cross appellant asserts error in the court's. action in not declaring the entire indebtedness owed by Joseph to be due and payable at once.

Counsel argues that the security under the mortgage had been diminished by Joseph to the extent to justify an acceleration of the balance due.

The evidence in this regard is equivocal' and of little probative force. The lower· court was justified in refraining from awarding such relief.

■ This aside, this assignment is not sufficiently argued to invite our review.

The decree of the lower court is therefore due to be affirmed in all aspects.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.

### On Rehearing

HARWOOD, Justice.

In brief in support of appellant's application for rehearing, counsel argue that we consider and rule upon the court's action in refusing to admit evidence tending to show the decrease in Dr. Joseph's earnings occurring after Dr. Hopkins had re-

opened his office; evidence that many of Dr. Hopkins' patients, after the reopening of his office, had been his patients prior to the sale of his business to Dr. Joseph, or patients of Dr. Hopkins and Dr. Joseph during their association; and that Dr. Joseph had been unable to sublease the Exchange Hotel location, but was yet liable for the rent.

In noting one of his exceptions to the above rulings, counsel stated: "\* \* \* this is an infringement of good will which is expressed in the contract."

■ Dr. Hopkins having a lawful right under the contract to reopen his office evidence that Dr. Joseph's professional income declined thereafter was immaterial in establishing a breach of the contract.

■ Where one has a lawful right to conduct a rival business or profession, he is permitted to deal with former patrons or clients who, because of past services may elect to again patronize him. 24 Am. Jur., Good Will, Sec. 23. The evidence that former patients returned to Dr. Hopkins shed no light upon the question of whether the contract between Hopkins and Joseph had been breached, and was properly rejected. Likewise as to the proffered evidence seeking to establish that Dr. Joseph was liable under the rental contract for the Exchange Hotel location, which lease had been duly transferred by Hopkins to Joseph, and the transfer accepted in writing by Joseph.

There being no breach of the contract resulting from Dr. Hopkins reopening his office, and his actions being lawful, no damages could be claimed, nor proved.

The court's rulings in the premises were therefore correct.

Opinion extended; application overruled.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.